CANTON LUMBER COMPANY

*vs.*

L. H. BURTON LUMBER COMPANY.

———

L. H. BURTON LUMBER COMPANY

*vs.*

CANTON LUMBER COMPANY.

*Action for Conspiracy—Evidence.*

That an employee of plaintiff corporation, who wrongfully diverted a contract from it to defendant corporation, did so while arranging for employment by the latter, did not support a charge of conspiracy on which the suit was based.   p. 14

In an action against a corporation on the ground of a conspiracy, between it and an employee of plaintiff corporation, to divert a contract from plaintiff to defendant, the circumstances being as consistent with the innocence as with the guilt of defendant, the jury cannot speculate as to whether the accusation is well founded, and in the absence of evidence of knowledge on defendant's part that it was participating in a violation of plaintiff's rights, a judgment against it must be reversed.
p. 14

*Decided March 15th, 1923.*

Appeals from the Superior Court of Baltimore City (STANTON, J.).

Action by the L. H. Burton Lumber Company against the Canton Lumber Company. From a judgment for plaintiff, both plaintiff and defendant appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Stuart S. Janney* and *R. Lee Slingluff*, with whom was *Charles E. Cockey* on the brief, for the Canton Lumber Company.

*Edward M. Hammond*, with whom were *Karr, Hammond & Darnall* on the brief, for the L. H. Burton Lumber Company.

URNER, J., delivered the opinion of the Court.

The L. H. Burton Company and the Canton Lumber Company are corporations engaged in the wholesale lumber business in the City of Baltimore. In this suit the Burton Company charges that the Canton Company entered into a conspiracy with a co-defendant, William J. Werner, an officer of the former company, for the purpose, which is alleged to have been accomplished, of preventing the plaintiff corporation from consummating a contract, which it was negotiating, for the sale and delivery to it of approximately two million feet of pine lumber. The contract of which the Burton Company claims to have been thus deprived had been proposed in December, 1919, by L. A. Clarke & Son, who were preparing to have the lumber supplied from timber tracts in Virginia and Southern Maryland for delivery in the spring and summer of 1920. The lumber was eventually contracted to be sold to the Canton Company. None of it was actually delivered and accepted. The only shipment under the contract was made about the first of September, 1920, and consisted of a small schooner load of 60,000 or 70,000 feet of lumber, which was rejected as not conforming to specifications.

The case was tried against the Canton Company alone, process not having been served on Werner, the other defendant, and the trial resulted in a verdict and judgment in favor of the plaintiff for $2,750. An appeal was taken by the Canton Company because of the refusal of its prayer to have the case withdrawn from the jury. The plaintiff also appealed, mainly because of instructions and adverse rulings on

evidence by which the recovery is said to have been unduly restricted.

It was proved that Clarke & Son offered in the first instance to sell the lumber to the plaintiff, and that it was sold to the Canton Company after Werner, who acted for the plaintiff in regard to the proposal, had represented it to be unwilling to make the purchase. Lawrence H. Burton, president of the plaintiff corporation, testified that when the letter containing the offer of Clarke & Son was received, he instructed Werner as to the tenor of the reply, which requested further information, and as to the form of a subsequent letter advising Clarke & Son that a representative of the plaintiff would call to see them at their office in Washington, and stating that the plaintiff would be glad to contract for the lumber offered for sale. The testimony of Burton was further to the effect that Werner visited Clarke & Son under instructions to buy the lumber for $32 per thousand feet, if possible, but to offer as much as $35 per thousand, if necessary, in order to secure the contract; that Werner returned with the report that Clarke & Son wanted $40 per thousand for the lumber, and the negotiations were not continued at that time because the witness thought the price demanded was excessive; that being in urgent need of lumber he authorized Werner to again visit Clarke & Son and offer them $38 per thousand, if they were not willing to sell for a lower price, but Werner again reporting that they declined to sell for less than $40 per thousand, the effort of the plaintiff to purchase the lumber was abandoned. It was sold to the Canton Company, under two contracts, for $35 per thousand feet. This fact did not come to Burton's knowledge until the following year.

In the correspondence between the Canton Company and Clarke & Son, in regard to the purchase of the lumber in question, reference was made to Werner as having acted for that company in the transaction. He shortly afterwards severed his relations with the Burton Company and entered

the Canton Company's service. The subject of his employment by the latter company was under consideration between them when the plaintiff received and was dealing with Clarke & Son's proposal. During that period Werner was visited at various times by Daniel F. Senft, the general manager of the Canton Company, at the plaintiff's place of business.

According to Werner's testimony, the purchase of the lumber offered for sale by Clarke & Son was not desired or authorized by the plaintiff, but was opposed and forbidden by its president, Mr. Burton, on the ground that the lumber was still in the woods, and the time when it would be ready for delivery was uncertain, and the market price might fall before it would be received. There was an emphatic denial by Werner that he had ever been directed by Burton to make any offer for the lumber to Clarke & Son. The purpose of the letters written by him to that firm, as he stated, was to hold the subject open for a time. He testified that when he had reported in person to Clarke & Son the refusal of Mr. Burton to buy the lumber, he asked whether they would be willing to sell it to the Canton Company, by whom he was to be employed. This inquiry, he said, was not made at the instance of that company or with its knowledge. The reply of Clarke & Son was in the affirmative, and the price of $35 per thousand feet was specified. The first mention of the subject to any representative of the Canton Company, as Werner states, was when he told Mr. Senft, its general manager, that it could buy the Clarke lumber at the price quoted. It was further testified by Werner that no compensation or profit was received by him on account of the transaction, and that it had no connection with the agreement under which he later entered the service of the Canton Company.

Mr. Senft testified that he had known Werner for ten or twelve years, having had dealings with him in the lumber business, and having met him in a social way on a number of occasions. In December, 1919, he asked Werner whether he knew of a man who could serve as manager of a lumber

yard which the Canton Company was preparing to establish at Doswell, Virginia. Werner replied that he would take the position himself if offered sufficient compensation. They soon reached an agreement on the subject. Before the Canton Company ever heard of the opportunity to buy the Clarke lumber, Mr. Senft said, it had been definitely settled that Werner was to enter the service of that company on the first of the following March. When the purchase of the lumber was first mentioned by Werner to Senft, the latter, as he testified, at once asked whether the Burton Company did not wish to buy it, and it was only because of Werner's assurance to the contrary that the Canton Company became interested. The employment of Werner by that company, Senft stated, had no reference to the lumber contract.

The capital stock of the Burton Company, with the exception of one share, was wholly owned by Burton and Werner, and they currently drew equal amounts from the earnings of the business. Their relations had not been satisfactory for some time prior to Werner's agreement to enter the Canton Company's employment. About the first of February, 1920, Werner notified Burton of his intention to sever his connection with the Burton Company a month later. Preliminary to his withdrawal there was a settlement resulting in Burton's purchase of Werner's stock.

The testimony of Burton and Werner being in contradiction as to the directions of the former in regard to the proposed purchase of the Clarke lumber, the jury evidently exercised its right to believe the statement that the offer was intended and authorized to be accepted. The adoption of this view involved a conclusion that Werner had violated his instructions when he stated to Clarke & Son that Burton was unwilling to buy the lumber which they were offering to sell. But the judgment appealed from is against the Canton Company, and the difficulty is to find in the record any evidence that it conspired with Werner to deprive the company with which he was associated of the benefits of a contract into

which it would otherwise have entered.    If Werner wrongfully diverted the Clarke offer from the Burton Company to the Canton Company, the fact that he did so while he was arranging to be employed by the latter company would not of itself support the charge of conspiracy upon which the suit is based.    The conduct of the officer of the Canton Company who represented it in the transaction was not such as to warrant a belief that he was conspiring to injure the Burton Company's interests.    If he had been engaged in such a project, he would probably have made some effort to conceal his relations with his supposed confederate.    But he manifested no such disposition.    He openly visited Werner at the plaintiff's place of business during the period when the conspiracy is alleged to have been in process of consummation, and without any reserve he recorded in his letter to Clarke & Son the fact that Werner had arranged for the order.    The circumstances are consistent with the assertion of the general manager of the Canton Company that he bought the Clarke lumber in the belief that it had been refused by the Burton Company and with no purpose to interfere with its plans.    A contrary conclusion could only be the result of conjecture.

It is a recognized and reasonable rule that if the circumstances are as consistent with the innocence as with the guilt of a defendant charged with conspiracy in an action like the present, the jury will not be permitted to speculate as to whether the accusation is well founded, 12 *C. J.* 639 ; *Ballentine* v. *Cummings,* 220 Pa. 621 ; *Dart* v. *McDonald,* 107 Wash. 537 ; *Walsh* v. *Walsh,* 285 Mo. 181.    Without legally sufficient proof of the alleged conspiracy the Canton Company could not be held responsible for a breach of duty which Werner might be found to have committed.    5 *R. C. L.* 1103 ; *Brinkley* v. *Platt,* 40 Md. 529.    Its liability was necessarily dependent upon the existence of knowledge on its part that it was participating in a violation of the plaintiff's rights. *Debnam* v. *Simonson,* 124 Md. 358.    The evidence, in our opinion, is not legally sufficient for a determination to that effect.

The agreements between Clarke & Son and the Canton Company provided that from 300,000 to 500,000 feet of lumber should be delivered between February 1 and October 1, 1920, and from 600,000 to 1,200,000 feet between March 1, 1920, and March 1, 1921. It was not proved that the plaintiff could have obtained any different terms as to deliveries. As already stated, none of the lumber was actually shipped, except a comparatively small quantity which was forwarded and rejected about the first of September, 1920. In the meantime the market price of lumber declined to such an extent that if the contract had been thereafter fully performed within the periods agreed upon, the purchaser would probably have sustained a considerable loss. It may, therefore, be reasonably concluded that the plaintiff suffered no real injury because of the acts of which it complains.

There is evidence in the case from which it might be inferred that the negotiations between Clarke & Son and the plaintiff would have resulted in a contract between them if the instructions which are said to have been given Werner had been observed. The case has consequently been considered upon the theory that the plaintiff had such an interest in the transaction as would entitle it to maintain the pending suit if its right to enter into the proffered contract was wrongfully infringed. *Debnam* v. *Simonson, supra; Lewis* v. *Bloede,* 202 Fed. 7; *Temperton* v. *Russell* (1893), L. R. 1 Q. B. 715; *Brennan* v. *United Hatters,* 73 N. J. L. 729. But as we have been unable to find in the evidence any legally sufficient basis for the liability asserted against the only defendant affected by the trial below, it will be necessary to reverse the judgment. In view of this conclusion the question raised by the plaintiff's exceptions and appeal need not be determined. No reason for a new trial is apparent.

> *Judgment reversed, with costs to the Canton Company, and without the award of a new trial.*