## WILLIAM GOLDMAN *v.* HARFORD ROAD BUILDING ASSOCIATION ET AL.

*Purchase of Property—Information Secured from Competitor — Agency — Resulting Trust — Interference with Informant's Purchase—Liability as for Tort.*

The mere fact that one contemplating the possible purchase of certain property applied to a building association for a loan, to be secured by a mortgage on the property, did not make the association the applicant's agent.                    p. 681

Where one requested a building association to loan him a sum of money, in case he bought a particular piece of property, but the association did not undertake to refrain from competing with such applicant for a loan in the purchase of the property, and the applicant did not bind himself to secure the loan from the association, the undisclosed bargaining for and buying of the property by the association itself was neither a breach, nor the inducing of a breach, of any subsisting contract of the applicant with either the association or the owner of the land, so as to give a right of action to the applicant against the association.
pp. 681-683

That a building association utilized information, disclosed in an application to it for a loan on certain property, that the

property could be bought at a price, with the result that the association became the purchaser at that price, did not establish a constructive trust *ex maleficio* in favor of the applicant for the loan, desiring himself to buy the property.        p. 683

That knowledge of certain property being for sale was acquired by defendant association later than such knowledge was acquired by another, that it was acquired from such other, and that the association did not disclose to him its purpose to purchase the property, did not give such other a position superior to that of the association as regards the purchase of the property.
p. 684

Competition is not a tort, and so, where no fiduciary relation exists, it is not a tort for one to fail to disclose to his competitor the purpose to purchase what is the object of their common, though conflicting, desire.                    pp. 684, 685

An averment in the bill that defendant association, at the time when it told plaintiff that it would make him a loan for the purchase of certain property, but could not do so for ninety days, "had in fact purchased the property or was about to consummate a contract therefor," being in the disjunctive, must be taken most strongly against the pleader, which compels the conclusion that the association was not then the purchaser of the property, but was yet in the position of a prospective purchaser, as was the plaintiff.                    pp. 685, 686

Where the vendor of property makes a choice between two possible purchasers, and this choice is a free one, not induced by a legally wrongful act of the actual purchaser, any resulting damage to the other, in his loss of the bargain, is justified in the superior interest of society in maintenance of competition, and he must accept his failure as a consequence of inferior diligence or of the preference of the vendor.                    p. 686.

*Decided June 9th, 1926.*

Appeal from the Circuit Court of Baltimore City (Sol-TER, J.).

Bill by William Goldman against the Harford Road Building Association, Henry W. Ritter, and Joseph Bilz. From a decree dismissing the bill, plaintiff appeals. *Af-firmed.

The cause was argued before Bond, C. J., Pattison, Urner, Offutt, Digges, Parke, and Walsh, JJ.

_James E. Tippett,_ submitting on brief, for the appellant.

_Murray MacNabb,_ with whom was _J. Elmer Weisheit_ on the brief, for the appellees.

Parke, J., delivered the openion of the Court.

The questions on this appeal were raised by the separate demurrers of the Harford Road Building Association, Henry W. Ritter, and Joseph Bilz, the three appellees here and the defendants below, to the bill of complaint of the appellant, William Goldman. The appellant contends that the conduct of the appellees raised a constructive trust specifically to be enforced for his benefit as a prior expectant purchaser of a parcel of land, which was later sold by the owner, Joseph Bilz, to Henry W. Ritter, the agent for the Harford Road Building Association, with notice of the appellant's desire to purchase the land mentioned. The material allegations of fact, which are admitted by the demurrer, and which are the basis of the appellant's contention, may be thus summarized.

The course of the appellant's negotiations, at the beginning of March, 1925, for the purchase of an improved parcel of land in Baltimore City from its owner, Joseph Bilz, had proceeded to the point where the owner had named a selling price of eight thousand dollars. The appellant was willing to pay this sum, but did not possess sufficient money, so he thereupon applied to the Harford Road Building Association for a loan of from four to five thousand dollars, which was to be secured by a first mortgage lien on the property, which he proposed to buy. The association sent its representatives to examine the property and, in the course of this examination, it learned the name of the owner of the property and his agent for its sale, and the price at which the owner was willing to sell. After securing this information, the association "secretly and with intent to deprive" the appellant "of the opportunity of purchasing said property, and with the intent to profit through the information obtained as afore-

said, immediately, for itself and for its own benefit and interest, and without any notice to" the appellant, "began to negotiate with said owner and his agent for the purchase of said property, and within a few days caused a written contract of sale to be executed by the defendant, Joseph Bilz, and one Henry W. Ritter, an attorney at law, as purchaser," but who was acting in the purchase as the agent of his principal, the Harford Road Building Association, which thus bought the property for eight thousand dollars.

Within a day or two after making his application for the loan, the appellant inquired of the association in reference to the requested loan, and he was told that the loan would be granted, but that, as the association was not then in command of the funds, it would require about ninety days before the money could be supplied. The appellant was desirous of securing the property immediately, so he made application for the loan to another building association, which agreed to furnish the money at once, but when the appellant sought the owner to make the contract of purchase he learned from the owner that the property had been sold to the Harford Road Building Association; and further inquiry developed the fact that, at the time the officers of the association had stated to him that he could obtain the loan in about ninety days, the association had in fact purchased, or were about to consummate the purchase of, the property mentioned. The deed for the property had not been delivered to either the association or to the appellee, Henry W. Ritter, its agent, before the filing of the bill of complaint in this cause on June 3rd, 1925; and by the bill of complaint the appellant tendered himself as being "willing to assume and complete, upon reasonable notice," the contract of purchase between the appellee Bilz and the association through its agent Ritter.

The prospective relation between the appellant and the association on these admitted facts was merely to be that of borrower and lender, and, in their direct negotiations and in the making of the contemplated loan, both were and would necessarily be principals, as each was immediately acting on

his or its own account and so could not be acting in a representative capacity for the other. 1 *Sugden on Vendors* (8th Am. Ed.), 147, top of page 219. Hence the further averment of the bill of complaint that the application by the appellant to the association for the loan made the association the agent of the appellant is a conclusion of law which finds no support in the allegations of facts contained in the bill of complaint. The association was requested to furnish to the appellant a certain amount of money provided the appellant became the purchaser of a particular piece of property. The association did not undertake to refrain from competing with the appellant in the purchase of the property, which was on the market for sale; nor had the appellant bound himself to secure his mortgage loan from the association, and, upon being notified of the time within which the association would lend him the sum desired, he terminated his negotiations with the association, and forthwith made application to another building association for the loan and secured at once the credit accommodation sought. It follows that the undisclosed bargaining for and buying of the property by the association was neither a breach, nor the inducing of a breach, of any subsisting contract of the appellant with either the association or the owner of the land. If the association had induced the owner of the land to break a contract between the owner and the appellant for the sale and purchase of the land, the appellant would have a right of action in tort against the association, under the rule first announced in *Lumley v. Gye* (1853), 2 E. & B. 216, and now firmly established in this jurisdiction. A contract, it is true, can only impose its obligations upon those who are parties to it, but a duty rests upon third persons not to interfere, without lawful justification, with the due performance of the obligations of the parties under the contract. *Knickerbocker Ice Co. v. Gardiner Dairy Co.,* 107 Md. 556, 564; *Sumwalt Ice Co. v. Knickerbocker Ice Co.,* 114 Md. 403, 414; *Cumberland Glass Manufacturing Co. v. DeWitt,* 120 Md. 381, 392; *Gore v. Condon,* 87 Md. 368, 376. And so a right of action is given under this rule against a third party who un-

justifiably causes an existing contract to be terminated without breach, as, for instance, where a workman is employed so long as his work is satisfactory, with the right, however, of the employer to discharge him at any time or at the end of any period of employment, and a third party procures his discharge wholly in consequence of the threat of such third party to cause pecuniary loss to the employer if the employee be not forthwith discharged. *Lucke v. Clothing Cutters Assembly,* 77 Md. 396, 410; *Bottomly v. Bottomly,* 80 Md. 159, 163; *McCarter v. Chamber of Commerce,* 126 Md. 131.

But, in the language of Sir William R. Anson, "There is a clear distinction between inducing A to break his contract with X, and inducing A not to enter into a contract with X. The man who induces another to break a contract induces him to do what is in itself actionable; but no liability attaches to the refusal to make a contract. Consequently, where A is induced not to contract with X, the inducement, if it is to be actionable, must be of an unlawful kind, as for example acts of coercion and intimidation." *Anson on Contracts* (Am. Ed. by Corwin), p. 345. Of course, if the formation of a contract is prevented by any form of fraud, an action arises, as is illustrated by *Canton Lumber Co. v. Burton Lumber Co.,* 143 Md. 9, where it was alleged that a servant in the course of his employment had fraudulently conspired with a third party to prevent by deceit and misrepresentation his master from securing a trade contract, whereby the employer suffered a pecuniary loss, and it was recognized that the third party and the servant were liable, if the conspiracy had been established, and, as it was not, the servant remained responsible in tort.

In *Debnam v. Simonson,* 124 Md. 354, the gravamen of the declaration was that an architect employed by a builder had fraudulently and maliciously entered into a conspiracy with third parties to purchase the land upon which the projected apartment house was to be erected in accordance with the plan of the builder, and thereby caused a failure of the project to the alleged loss of the employer. The Court declared the declaration bad on demurrer, because it neither

alleged that the plaintiff had acquired any rights in the land superior to those possessed by the defendants, nor that the plaintiff would have become the purchaser of the property and would have then consummated his contemplated project but for the interference of the defendants. This Court, in the course of its opinion, stated the rule somewhat more concretely and appositely than the text quoted above from *Anson,* when it said: "The mere fact that the plaintiff has suffered damage or has lost an opportunity to profit financially because of his failure to consummate his plans owing to the purchase of said lot of land by the defendants, does not in itself give him the right of recovery from the defendants for the damage sustained by him. The act must be of such a character as to create an actionable wrong before the right of recovery against the defendants exists, and to create an actionable wrong the legal rights of the plaintiff must in some way be invaded. There must be a violation of a legal right committed knowingly to create a cause of action." *Supra,* at p. 358.

The allegations of the bill of complaint are not sufficient to establish a fiduciary or confidential relation between the appellant and any of the appellees, nor do they show an express or implied contractual relation existing between the appellant and one or more of the appellees. Hence the appellant could have no action arising either from the inducing of a breach of contract or from the breach of any duty depending upon a fiduciary relation. Nor do the averments of the bill of complaint show that the purchase of the land by the association was procured by any fraud, threat, coercion, or intimidation exercised and practiced upon the vendor or the complainant to the prejudice of the temporal rights of the complainant. At the most, the bill of complaint charged the association with utilizing the information, disclosed to it by the appellant when he applied for a loan, that a certain improved lot of land could be bought at a price, with the result that the association became the successful purchaser at that price. We do not find these allegations sufficient, either on authority or on principle, to establish a constructive trust *ex maleficio.*

The lot was in the hands of an agent for sale, and the appellant's knowledge of this fact was neither exclusive nor confidential, since the information imparted to the association was procurable, upon inquiry, of the owner or his agent. Furthermore, at the time the appellant submitted his application to the association for a loan, the owner was free to sell or not to sell; or to sell to any one, at any price, upon any terms, for any reason, whim, or caprice, and whenever he might choose. *Knoche v. Standard Oil Co.*, 138 Md. 278, 282, 283; *McCarter v. Chamber of Commerce*, 126 Md. 131, 136. The mere fact that the association acquired its knowledge later in point of time and from the appellant instead of from the owner or his agent gave the appellant no superior legal position over the association. Nor was the association under any legal obligation to disclose to the appellant that it was his competitor in the purchase of the property. *Coleman v. Applegarth*, 68 Md. 21, 27, 31; *Chicora Fertilizer Co. v. Dunan*, 91 Md. 144, 159-163.

"Iron sharpeneth iron" is ancient wisdom, and the law is in accord in favoring free competition, since ordinarily it is essential to the general welfare of society, notwithstanding competition is not altruistic but is fundamentally the play of interest against interest, and so involves the interference of the successful competitor with the interest of his unsuccessful competitor in the matter of their common rivalry. Competition is the state in which men live and is not a tort, unless the nature of the method employed is not justified by public policy, and so supplies the condition to constitute a legal wrong. Disparity in knowledge, experience, skill, credit, wealth, or foresight of the competitors does not of itself furnish this additional condition, and make the competition unequal in a legal sense, since each competitor must necessarily bring to every competition his attributes, which may be a benefit or a detriment, but which are not an extraneous advantage, as they simply constitute his subsisting equipment for the business of life. The law accepts this inherent disparity as being the basic condition of the indi-

vidual in society and a quality entering into every treaty, and, by reason of its universality, the law does not treat the presence of the disparity mentioned as destroying the legal equality of the competitors.

So, where no fiduciary relation exists, it is not unlawful competition for one to fail to disclose to his competitor the purpose to purchase what is the object of their common, though conflicting, desire. The law does not treat reticence from the viewpoint of honor, but must apply the standard set by legal rights and duties which are prescribed by public policy, in the sense of what is most conducive to the utility, convenience, and advantage of the general public. When a borrower is dealing with a lender, the latter should tell him no lies in the negotiations, but the borrower has no legal right to expect that the lender should say he was seeking, or would seek, to buy what the borrower was expecting to buy. A prudent man may ever conceal from his rival his desire to buy, and one bargaining for property always does "so with the knowledge of the probability that, until he binds the owner by obtaining an option or a contract, an unknown buyer may intervene, and, without liability to him, purchase the property." *Supra. Coleman v. Applegarth,* 68 Md. 21, 27-31; *Chicora Fertilizer Co. v. Dunan,* 91 Md. 144-163; 1 *Mechem on Agency* (2nd Ed.), 1195.

From the time the appellant applied to the association for the information if the association would lend him the sum desired, if he should become the purchaser of the property, until the time it advised the appellant that he could obtain the accommodation desired in ninety days, the association had acted without delay, in accordance with its usual course in respect to applications for loans; and there is no question of the good faith of the association in stating that it would not be in funds to meet the loan until the expiration of the period named. At the time the appellant was told of this decision, the bill of complaint alleged that the association "had in fact purchased the property or

were about to consummate a contract therefor." This averment is in the disjunctive and does not gratify the rule requiring certainty in pleading, and must be taken most strongly against the pleader, which compels the conclusion that the association was not then the purchaser of the property, but was yet in the position of a prospective purchaser, as was also the appellant. The association is not charged with a single act which could be construed to be a breach of any right of the appellant or of any duty of the association. The sum of the offending of the association is that it become a competitor of the appellant, and did not make this known to the appellant. The association was, however, in the exercise of its legal right in seeking to buy, and it infringed no legal right of the appellant by its non-disclosure of this fact, and the equality of the two buyers was not impaired in any legal sense by the reticence of the association. There is nothing to suggest that the silence of the association induced any prejudicial change in the conduct or situation of the appellant. The vendor made a choice between the appellant and the association, and, as this choice was a free one and was not procured by a legally wrongful act of the association, any resulting damage to the appellant, in his loss of the bargain, is justified in the superior interest of society in maintenance of competition, and he must accept his failure as the consequence of inferior diligence or of the preference of the vendor. *Supra.* And see *Bigelow on Torts* (7th ed.), pars. 233-241, pp. 114-120: 1 *Bigelow on Fraud,* ch. 14, p. 590; 2 *Cooley on Torts* (3rd ed.), p. 908; *Clerk & Lindsell on Torts* (7th ed.), 19, 20; *Klingel's Pharmacy v. Sharp & Dohme,* 104 Md. 218, 232-235; *Cumberland Glass Manufacturing Co. v. De Witt,* 120 Md. 381, 394, 396; *Mogul Steamship Co. v. McGregor,* 23 Q. B. D. 598, 613-616 (1892), A. C. 25; *Pratt v. British Medical Assn.* (1919), L. R. 1 K. B. 244, 256-268; *Walker v. Cronin,* 107 Mass. 555, 564; *Clark v. Delano,* 205 Mass. 224; *O'Reily v. Bevington,* 155 Mass. 72.

*Decree affimed, with costs.*