In re UNDER SEAL.

John DOE 1; John Doe 2,
Plaintiffs–Appellants,

v.

John DOE 3; John Doe 4; John Doe 5;
John Doe 6, Defendants–Appellees.

No. 90–2907.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1991.

Decided Sept. 27, 1991.

Francis Edward Mroz, Curtin, Nolan & Gallagher, Ltd., Vienna, Va., argued, for plaintiffs-appellants.

Freddi Lipstein, Sr. Appellate Counsel, Civ. Div., U.S. Dept. of Justice, Mark L. Shaffer, Liebowitz & Shaffer, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and WIDENER and SPROUSE, Circuit Judges.

## OPINION

SPROUSE, Circuit Judge:

We review the district court's grant of summary judgment to a private corporation ("defendant corporation"), the sole remaining defendant in an action by the plaintiffs (a private company and its sole owner—hereafter "plaintiffs") against the corporation and several federal government agencies arising out of the parties' involvement in a highly-classified program of the United States government. Although the program involves sensitive national security interests, the dispute itself is simply a commercial one between the plaintiff and the defendant corporation concerning a contract for services necessary to a small part of the government program. More specifically, the plaintiffs allege the corporation's owner, John Doe, and government employees conspired to prevent the plaintiffs' contract from being renewed, thereby maliciously interfering with their business opportunity with a government agency.

I

In 1984, the defendant corporation contracted with one of the government agencies involved in this controversy to provide commercial services relating to the physical security of a limited phase of an extensive government project designed to protect the national security. Both Doe and corporate personnel were purposely kept uninformed as to the full scope of the government project. Towards the end of the initial contract, it became apparent both to Doe and agency officials that the defendant corporation could not continue to perform certain tasks without jeopardizing the security of the operation.

As a result, Doe recruited the individual plaintiff to provide the physical security requirements and the corporation he formed was subsequently awarded a two-year contract to perform certain tasks previously performed by the defendant corporation. As with the defendant corporation, the work plaintiffs contracted to perform was limited to a relatively small phase of the entire project and plaintiffs were deliberately kept unaware of its full scope. Towards the end of the contract's term, government agency personnel became displeased with a number of the individual plaintiff's activities—perceiving an attempt on his part to become involved in matters not assigned to him or his company. After the individual plaintiff generated a document advancing ideas for future operations, agency officials directed an audit of his records which apparently cemented their fears of the effect of his perceived expansive ambitions. After unsuccessful negotiations for a renewal, plaintiffs' contract was permitted to expire at the end of its term.

Accusing Doe of complicity in the agency's failure to renew their contract, the plaintiffs brought this action against both the defendant corporation and government agencies for malicious interference with business or occupation[1] and violation of

---

1. Maryland law has long recognized a cause of action for maliciously interfering with another's right to pursue his business or occupation. *See Lucke v. Clothing Cutters & Trimmers' Assembly,* 77 Md. 396, 26 A. 505 (1893). Generally, grouped in two categories, the tort encompasses "inducing the breach of an existing contract, and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 69, 485 A.2d 663 (1984); *see also Cumberland Glass Mfg. Co.*

the Privacy Act, 5 U.S.C. § 552a. On August 16, 1989, upon plaintiffs' motion the trial court sealed the record and a month later granted the defendants a protective order to protect classified information relating to national security after considering the *in camera* submission of an involved federal agency. In October 1989, the court dismissed the Privacy Act claim and transferred the claims against the government agencies to the United States Claims Court. Only the plaintiffs' action against the defendant corporation remained in the district court. The government filed a statement of interest, pursuant to 28 U.S.C. § 517, and moved for an additional protective order on November 28, 1989. The parties and the court agreed to abide by the security measures suggested in the government's proposed protective order—including conducting depositions in a secure facility in the presence of government security officials for the purpose of advising the deponents concerning information that properly could be revealed. After several depositions and other preliminary matters were conducted in this fashion, the United States invoked its privilege against providing evidence that might endanger national security. In formally invoking the state secrets privilege,[2] the security reference presented his affidavit and affidavits of other agency officials outlining the government program and the information sought to be protected by the invocation of the privilege. After considering the government's *in camera* submissions and finding the privilege properly invoked, the court denied plaintiffs' motion to compel answers to questions that had been asked but unanswered during the deposition proceedings. On February 23, 1990, the court granted defendant corporation's motion for summary judgment-opining that there was no genuine issue of material fact as to a crucial element of the Maryland law grounding the action for malicious interference with business—i.e., that the record contained nothing to show any intentional or willful act on the part of defendant corporation constituting an interference with prospective business opportunity other than for its own economic interest. Following the denial of their motion to alter the summary judgment order, plaintiffs filed this appeal.

The plaintiffs, on appeal, claim primarily that summary judgment was granted prematurely—that allowed more depositions, they would have been able to develop a factual basis for tortious interference with business or occupation sufficient to satisfy the Maryland law defining that tort. They also complain that deponents were unduly restrained in their responses by security agents monitoring the depositions. The plaintiffs contended and contend here that, if unchecked by the security constraints, they could show that Doe and government officials maliciously conspired to terminate their contract in order to award it to Doe or the defendant corporation.[3]

## II

■ In asserting the state secrets privilege, the government presented for *in camera* consideration the affidavit of the Secretary of Defense asserting the privilege along with other affidavits outlining the project and explaining why unrestricted discovery would jeopardize national security. Plaintiffs do not quarrel with the

*v. DeWitt,* 120 Md. 381, 394–95, 87 A. 927 (1913) *aff'd* 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915).

**2.** The common law recognizes a privilege for military and state secrets the disclosure of which would compromise public interest. *See* McCormick on Evidence § 107 (3d ed. 1984). "The various harms, against which protection is sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." *Ellsberg v.*

*Mitchell,* 709 F.2d 51, 57 (D.C.Cir.1983) (footnotes omitted), *cert. denied, sub nom.* 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 148 (1984), 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1987). This privilege may only be asserted by the government itself. Upon proper invocation by the head of the affected department, the privilege renders the information unavailable regardless of the other party's need in furtherance of the action. *See generally* McCormick on Evidence *supra* at §§ 107, 109, 110.

**3.** Doe sold the defendant corporation to its present owners on August 27, 1987.

government's assertion of the state secrets privilege nor with the district court's recognition of its validity. They, however, argued below and here that the protective order could be modified in such a way as would permit them to develop the factual basis for their action without violating the government's privilege not to reveal sensitive, classified information and protect the national security interests. We think not. The resolution of the issue, of course, involves an analysis of the principles governing the state secrets privilege as it impacts upon the plaintiffs' action—the Maryland action for malicious interference with business or occupation.

Our early jurisprudence provided little guidance for the scope or application of the state secrets privilege because it was rarely invoked. Unfortunately, but perhaps necessarily, its parameters in recent years have been more clearly drawn by a growing number of decisions wherein the judiciary has been required to determine if a litigant must be to some extent deprived of his otherwise constitutionally guaranteed right of access to the courts where facts bearing on national security are involved.

■■■ As recognized by the Supreme Court in *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), in order to invoke the privilege protecting evidence of state secrets,

> [t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

*Id.* at 7–8, 73 S.Ct. at 532 (footnotes omitted). Although the privilege is absolute when properly invoked, the court is the final arbiter of the propriety of its invocation. *See Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1240 (4th Cir.1985). As the District of Columbia Circuit wrote in *Ellsberg v. Mitchell*, 709 F.2d 51 (D.C.Cir.1983),

> Whether (and in what spirit) the trial judge in a particular case should examine the materials sought to be withheld depends upon two critical considerations. First, the more compelling a litigant's showing of need for the information in question, the deeper "the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate." Second, the more plausible and substantial the government's allegations of danger to national security, in the context of all the circumstances surrounding the case, the more deferential should be the judge's inquiry into the foundations and scope of the claim.

*Id.* at 58–59 (footnotes omitted). *See also Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533 ("In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate.")

Here, application of Maryland law to the facts the plaintiffs posit they would prove if afforded fuller discovery access to witnesses, quickly convinces us that the "necessity" contemplated by *Reynolds* is questionable, at best. Conversely, after review of the affidavits submitted by the government, we are persuaded that the allegation of potential danger to national security if fuller discovery were permitted is substantial.

■■■ In order to prevail under Maryland law in an action for malicious interference with business, the plaintiffs must show an intentional, malicious interference with their business or occupation by a third party. *See Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 70–71, 485 A.2d 663 (1984) (citing *Willner v. Silverman*, 109 Md. 341, 355, 71 A. 962 (1909)). Specifically, the elements of the tort where there is no existing contract are:

> (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants

(which constitutes malice); and (4) actual damage and loss resulting.

*Willner,* 109 Md. at 355, 71 A. 962 (quoting *Walker v. Cronin,* 107 Mass. 555, 562 (1871)). Interference designed solely to advance the competitive economic interests of the defendant, however, is not considered malicious and cannot ground the action. *See Goldman v. Harford Road Bldg. Ass'n,* 150 Md. 677, 684–85, 133 A. 843 (1926); *see also Natural Design,* 302 Md. at 72, 485 A.2d 663 ("One recognized ground of 'just cause' for damaging another in his business is competition").

█ Plaintiffs, in their complaint and arguments before the district court, continually asserted that Doe conspired with involved government officials to prevent the renewal of their contract so that Doe or his company could be awarded the contract as a reward for their past services. The district court was of the opinion—and we agree—that such asserted facts standing alone evidence merely economic motives and that the plaintiffs could not by them establish the essential elements of their cause of action. Plaintiffs assert, however, that if allowed more liberal access to deposition witnesses, they could establish a malicious motive. Neither in the district court, nor in argument on appeal, however, were they able even to speculate as to what malicious elements of the alleged conspiracy they could prove. Their argument revisits Doe's alleged desire to renew his former relationship with the government program and the complicity of unknown agency officials in accommodating Doe's ambition.

Be that as it may, in view of our holding that the evidentiary privilege was properly invoked, the correctness *vel non* of the summary judgment must be gauged on the present record without opportunity for further evidence. In *Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268 (4th Cir.1980), we addressed a similar action for tortious interference with contract. The Department of the Navy there asserted the state secrets privilege. The district court, after recognizing the privilege, dismissed the case on the basis that in those circum-

stances the plaintiff could not develop sufficient facts to create an issue for the jury. Significant to this case, Judge Murnaghan wrote for the original panel majority there:

> The unavailability of the evidence is a neutral consideration, and, whenever it falls upon a party, that party must accept the unhappy consequences. If the assertion of the privilege leaves plaintiff without sufficient evidence to satisfy a burden of persuasion, plaintiff will lose. If plaintiff's case might be established without the privileged information, dismissal is not appropriate. The same standards apply to defendants.

*Id.* at 271–72 (footnote omitted) (citations omitted). The same rationale, of course, applies in considering the quantum of pretrial evidence present to withstand a motion for summary judgment.

Again, the plaintiffs contest not the invocation of the privilege, but the scope of its effect. They concede that they cannot proceed to trial with the limited access to information imposed on them by the district court. Generally, of course, there is the regrettable consequence flowing from recognition of the privilege expressed by Judge Murnaghan in *Farnsworth Cannon*—one of the parties' litigation position suffers from its inability to discover and present all of the facts it might seek. "If the assertion of the privilege leaves plaintiff without sufficient evidence to satisfy a burden of persuasion, plaintiff will lose." *Id.* at 271–72. While we suffer the discomfort experienced by all American courts in depriving a litigant of a judicial forum in cases where countervening national policies or zealously-protected rights of an individual are implicated, here we not so reluctantly conclude that the district court was correct in granting summary judgment.

First, plaintiffs were not seeking discoverable information known to exist, but were attempting to fortify vague allegations made by potential witnesses concerning an undefined conspiracy to help the defendant corporation obtain the contract. Apart from such hopeful discovery possibilities, the worst case scenario suggested by the record is one where Doe encourages

the displacement of plaintiffs in order to further his own economic advantage—circumstances which do not constitute the malice required under Maryland law. Considering those circumstances against the setting of the controversy emphasizes the weakness of plaintiffs' protests. Having been awarded a commercial contract to assist in providing physical security to a sensitive government project affecting national security, one might expect some restriction on the airing of personal grievances where the publicity would defeat the very security he was employed to protect. To say the least, there is a certain lack of grace in one supping at his benefactor's table complaining of the fare.

As did our *en banc* court in *Farnsworth Cannon*, we have reviewed *in camera* the Secretary's affidavit and supporting affidavits, and are firmly persuaded that the government's allegation of potential danger to the national security is substantial. What we said in *Farnsworth Cannon* is applicable here:

> That affidavit has not been seen by counsel, and without some disclosure of the affidavit to counsel, the trial lawyers would remain unaware of the scope of exclusion of information determined to be state secrets. Information within the possession of the parties on the periphery of the suppression order would not readily be recognized by counsel, unaware of the specific contents of the affidavit, as being secret or as clearly having been suppressed by the general order of the district court. In an attempt to make out a prima facie case during an actual trial, the plaintiff and its lawyers would have every incentive to probe as close to the core secrets as the trial judge would permit. Such probing in open court would inevitably be revealing. It is evident that any attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation.

*Farnsworth Cannon,* 635 F.2d at 281. We understand plaintiffs' feeling that they have considerable need to further develop a factual basis for their claim, but in gauging necessity in this context, we, of course, also consider its legitimacy under normal principles of discovery and conclude that plaintiffs' "necessity" in that sense is less than compelling.

The judgment of the district court is affirmed.

AFFIRMED.