UNION CAR ADVERTISING Co., INC., Appellant, *v.* BARRON G. COLLIER and Others, Respondents.

First Department, June 24, 1931.

*Joseph M. Proskauer* of counsel [*Walter D. Yankauer, Claude B. Cross* and *J. Alvin Van Bergh* with him on the brief; *Sperry & Yankauer*, attorneys], for the appellant.

*Martin Conboy* of counsel [*Caruthers Ewing*, attorney for Barron G. Collier and Eastern Advertising Co., Inc., and *Roosevelt & O'Connor*, attorneys for Guaranty Trust Company of New York, as executor, etc.], for the respondents.

O'MALLEY, J. The complaint sounds in tort. The first two causes of action are predicated upon defendants' wrongful interference with an alleged consummated contract; the third, upon wrongful prevention of an award of the same contract to plaintiff. As the complaint was dismissed at the close of plaintiff's evidence, the question presented is whether plaintiff established a *prima facie* case with respect to all, or any of such causes of action. An outline of facts essential to the determination of the question follows:

The plaintiff, a New York corporation, is engaged in the car advertising business. The corporate defendant, Eastern Advertising Co., Inc., is a New York company, engaged in a similar business, and is controlled largely by the defendant Barron G. Collier. Clinton Elliott, an original defendant, now represented by the defendant Guaranty Trust Company, as executor, was a stockholder and director of the corporate defendant in 1925 and prior thereto.

In the year last mentioned the Boston Elevated Railway Company, then under the control and supervision of a board of public trustees, whose members held office by appointment of the Governor of Massachusetts, made pursuant to a statute entitled "An Act to provide for the public operation of the Boston Elevated Railway Company," solicited bids for the exclusive business of placing advertising in the cars, motor buses and stations of said railway

company. The contract covering such privileges and expiring April 1, 1926, was then held by the defendant Eastern Advertising Co., Inc., at an annual rental of about $157,000 a year. Such defendant, as well as the plaintiff, and two additional concerns, known as the Boston Advertising Company and the Chicago Elevated Railway Advertising Company, submitted bids for the new contract which was to run for fifteen years from April 1, 1926.

Concededly, plaintiff's bid, which was in the total sum of $7,080,000, on a fifteen-year basis, exceeded the next highest bid, that submitted by the corporate defendant, by a sum in excess of $1,600,000. The contract, however, was subsequently awarded to the corporate defendant upon a five-year basis, but included, in addition to the privileges already mentioned, the right to install vending and weighing machine privileges in suitable locations on the platforms and in the stations of the railway company.

Plaintiff's first cause of action is predicated upon an oral contract allegedly had by it with the board of trustees before mentioned, to the effect that if the plaintiff would submit a bid and such bid was the highest, it would receive the contract. Its second cause of action is pred cated upon a conspiracy between the defendants and others to cause the railway company to breach such contract with the plaintiff; and the third cause of action is founded upon the claim of wrongful interference with, and the prevention of, the making of a contract which would in reasonable probability have been awarded to the plaintiff, were it not for the tortious interference of the defendants.

For reasons hereinafter to be stated, we are of opinion that the plaintiff failed to establish a *prima facie* case with respect to its first and second causes of action. With respect to the third cause of action, however, we are of opinion that such *prima facie* case was established.

The alleged consummated contract which is the basis of the first and second causes of action is predicated upon oral conversations had with two of the trustees, each one of whom at the time was serving as chairman of the board, and also with the general and assistant general manager of the board. Without expressing an opinion as to whether this agreement was unenforcible under the Statute of Frauds, we are of opinion that plaintiff's proof was insufficient to establish a *prima facie* cause of action on either of these first two counts and that the learned trial justice properly dismissed the complaint in this respect. It is a well-recognized rule that to bind a board such as these trustees constituted, action by them as a board, as such, under their collective authority, is required. (*Damon* v. *Selectmen of Framingham*, 195 Mass. 72;

*Rowe* v. *Inhabitants of Peabody*, 207 id. 226, 236; *Meander* v. *West Newbury*, 256 id. 37; *People's Bank* v. *St. Anthony's Roman Catholic Church*, 109 N. Y. 512, 522.)

On the record before us we find no such proof. The conversations in which the alleged oral agreement was embodied must be deemed to be merely the individual acts of the parties engaging therein. There is insufficient, if any, evidence in the record from which there may reasonably be deduced an authority given to the trustees or managers, in the first instance, to bind the board as a whole, nor any action by the latter ratifying or adopting the oral transactions between the plaintiff and the individuals mentioned. Without specifically referring to the portions thereof, the act itself under which the board was constituted, shows that a concerted majority decision was required. In such circumstances one dealing with a board thus constituted pursuant to the provisions of a statute, is chargeable with notice of the limitation of powers conferred therein, and the doctrine of ostensible or implied authority is not applicable. (*McDonald* v. *Mayor, etc.*, 68 N. Y. 23, 27; *Village of Fort Edward* v. *Fish*, 156 id. 363, 371; *Meander* v. *West Newbury, supra.*) We are constrained, therefore, to sustain the judgment, in so far as it dismissed the first and second causes of action.

We are of opinion, however, that with respect to the third cause of action, plaintiff made out a *prima facie* case calling upon the defendants to come forward and defend. While the principle of law which plaintiff invokes is more or less novel, and is not as yet well defined and formulated by a lengthy line of judicial decisions, it seems clear that the third cause of action as alleged is well founded upon a theory of unfair competition. Just as a business man who occupies a fiduciary relationship with another " is held to something stricter than the morals of the market place " (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464), so the same business man, though not occupying a fiduciary relationship, may not, within the law, when engaged in ordinary business transactions with another, and dealing at arm's length, descend *below* the morals of the market place. We are of opinion that it is unfair competition not to be countenanced by a court of law for a business man, wantonly or maliciously, without provocation, to interfere with another person's business by preventing a third party from entering into a contract with such person which contract, it is reasonably certain, would have been made but for such interference. (*Lewis* v. *Bloede*, 202 Fed. 7; *Krigbaum* v. *Sbarbaro*, 23 Cal. App. 427; 138 Pac. 364; 15 R. C. L. p. 80; Nims Unfair Competition & Trademarks [3d ed.], § 176, p. 484.) While distinguishable upon the facts, such doctrine has also been recognized in decisions of Massachusetts. (*Walker*

v. *Cronin*, 107 Mass. 555; *May* v. *Wood*, 172 id. 11, 14, HOLMES, J., dissenting.)

In *Lewis* v. *Bloede* (*supra*) the rule was stated as follows: " It having been settled that an action, as for a tort, would lie for a malicious — that is wrongful — interference with the performance of an executory contract, the question naturally arose whether the principle extended to a case in which a third party, with like motive and without lawful excuse, by his interference prevented one from entering into, or making, a contract. The answer to this question is dependent upon the answer to another, which lies at the threshhold of the inquiry: Does the right to enter into or make a contract come within the definition of a legal right, the wrongful interference with which is actionable? It is difficult to say, in many cases, at what stage of a negotiation the condition has arisen when it can be said that two persons would, but for the interference of a third party, have entered into contract relations. If A. make a definite proposal to B. to enter into a contract, the character, terms, etc., of which are sufficiently definite to be capable of acceptance, and, while B. is negotiating, or after he has determined to accept the proposal, C. maliciously interferes and prevents the acceptance on the part of B., or procures a withdrawal of the proposition by A., by reason whereof loss is sustained, can it be said that the party who is injured by such interference has sustained no legal wrong, and that by reason thereof has sustained no injury — that is, loss? Is there not in such case *damnum et injuria*, which constitute the elements of an actionable wrong? Assuming, *pro hac vice*, that the facts averred in plaintiff's declaration are true, is it not clear that the Chemical Company, being prepared to comply with the terms of the government's proposal to buy the ink, which was the subject-matter of the proposal, and, accepting the invitation of the government to bid for the contract, by furnishing the sample and stating the price, it secured, over other bidders, a status in the negotiation which, but for defendant's interference, would have resulted in its making the contract by the performance of which it would have made a profit, why did it not have a status, the unlawful interference with which by defendants was a wrong for which he is entitled to a remedy? It is true that the right is more difficult to establish — requiring another link in the process of proof — than where the contract has been entered into. When the parties have entered into a contract, the terms of which are fixed, the plaintiff is only required to show the malicious interference and the damage proximately resulting; whereas, if the ground of complaint is that he was about to make a contract, he is required to go further and

show that he was not only ' about to,' but would, but for the malicious interference of defendants, have entered into the contract, etc. While there are but few adjudged cases throwing light upon the subject, we are not without authority to sustain the ruling of the court below in overruling the demurrer."

Among the authorities relied upon was the following quotation from American and English Encyclopedia of Law (Vol. 16, p. 1114): "According to some authorities, an actionable interference with contract relations is not confined to cases where the contract is binding and valid. It is actionable likewise to maliciously induce the termination of a contract terminable at will or to prevent the formation of contracts which in the natural course and but for such interference would have been formed."

Considering the motion to dismiss as being tantamount to a demurrer to the evidence, and giving plaintiff's proof every fair intendment to which it is entitled, we think that its case as presented was sufficient to require a denial of defendant's motion to dismiss.

Without specifying in detail all the evidence offered by the plaintiff in support of this cause of action, the essential and outstanding elements of its proof will be considered. A letter dated February 25, 1925, written to the railway company by the treasurer of the corporate defendant, contained a charge that the plaintiff inferentially, and its president and owner, Wineburgh, had lost every advertising privilege they ever possessed and that the plaintiff was " now running the advertising privileges in a small steam railroad." Plaintiff's evidence showed that it was successful in its other business ventures, and that instead of having the business of a small steam road, it had such privileges with the Pennsylvania railroad. Whatever its probative force, we are of opinion that this letter was clearly admissible and should have been received.

Plaintiff offered further proof tending to show that the bids submitted by competitors, other than by itself and the corporate defendant, were sham bids and that the companies presenting them were controlled and dominated by the defendant Collier; that one of such companies was a so-called " dead company;" that a sham letter from Artemus Ward & Co., Inc., a New York concern, owned and controlled by Collier, was sent to the board in which it refused to bid upon the false ground that the contract should be awarded to a local concern; that the defendants represented to the board that the plaintiff was a sham organization; that it was likewise falsely represented to the board that the plaintiff could not operate successfully, but would be dependent upon the defendant Collier and his company for business; that the defendant Collier and

others, acting on behalf of the corporate defendant, attempted to persuade the board to induce plaintiff to withdraw its bid, and did in fact persuade the board to conceal a contemplated noncompetitive letting of the contract, finally inducing the board to award the contract upon a five-year basis, without competitive bidding, through false representations and a written promise of indemnification to hold harmless the board and the railway company from a suit which plaintiff threatened to bring against the board in the event that the contract was not awarded to plaintiff.

In addition there was evidence tending to show an attempt to defeat plaintiff's efforts to secure its contract and its rights on the premises, by the use of outside influence. We are of opinion that all of this, taken in connection with the oral representations and promises alleged to have been made by individual trustees and employees of the board, were sufficient to establish *prima facie* that the defendants maliciously and for the purpose of preventing the plaintiff from obtaining a contract which otherwise it had a reasonable expectation of obtaining, so interfered with plaintiff's endeavors to secure the contract as to amount to unfair competition.

It must be remembered, as already noted, that we are required to consider the evidence with every fair intendment resolved in favor of the plaintiff. With its probative force and probabilities, much less the ultimate outcome of the action, we are not now concerned. Suffice it to say we believe that under the third cause of action the plaintiff offered sufficient evidence to put the defendants to their proof.

We are unable to agree with the contention of counsel for the defendant that the plaintiff, through its president, Wineburgh, abandoned its rights under the facts thus far stated, and agreed to enter into a new deal, either with the board or with Collier or the corporate defendant. At best the evidence relating to this abandonment and compromise presented issues of fact.

It follows, therefore, that the judgment should be modified by reversing so much thereof as dismisses the third cause of action, and directing that the complaint be dismissed as to the first and second causes of action, with costs, and the action severed and a new trial ordered as to the third cause of action; and as so modified affirmed, with costs of this appeal to the appellant to abide the event.

Finch, P. J., Merrell and Sherman, JJ., concur.

Order modified as directed in opinion and as so modified affirmed, with costs of appeal to appellant to abide the event.