[Civ. No. 1164.   Third Appellate District.—December 4, 1913.]

MARCELLUS KRIGBAUM, Appellant, v. ANDREA SBAR-
BARO et al., Respondents.

MONOPOLIES—CARTWRIGHT ANTI-TRUST LAW—COMBINATION TO PREVENT BROKER FROM EFFECTING SALE OF LAND—SUFFICIENCY OF COMPLAINT FOR DOUBLE DAMAGES.—In an action by a real estate broker against the stockholders of a bank for double the amount of damages alleged to have been sustained by him by their acts in preventing him from consummating the sale of certain real property devoted to the growing of wine grapes, a complaint alleging that the defendants combined together, in violation of the Cartwright anti-trust law (Stats. 1907, p. 984; Stats. 1909, p. 953) for the purpose of securing and maintaining a monopoly of the wine industry and of lands suitable to the growing of wine grapes in the state, and that they determined

to destroy the plaintiff's business, by reason of his having preferred charges against the bank to obtain its expulsion from a certain real estate board, and that they coerced the bondholders' committee of a certain vineyard corporation, who had employed the plaintiff to sell certain land, to refuse to conclude a sale negotiated by the plaintiff through his agency, does not state a cause of action under the Cartwright Act.

ID.—CHARACTER OF TRANSACTION—INJURY NOT DIRECTLY RESULTING FROM MONOPOLY.—It is manifest from the circumstances of the transaction complained of as divulged by the complaint that the injury, if any, sustained by the plaintiff in such transaction did not occur as the direct result of the restrictions in trade or commerce which it is charged are being maintained by the alleged trust or combination, but must have been directly occasioned, if at all, by the wrongful acts either of the trust itself, as a corporate entity, not acting within the scope of the purposes of its organization, or by the defendants, as individuals, combined together, it may be, for that express purpose.

ID.—INTERPRETATION OF CARTWRIGHT ACT—INJURY TO BUSINESS OR PROPERTY.—Injury in business or property within the contemplation of section 11 of the Cartwright anti-trust law providing that any person injured "in his business or property by any other person or corporation or association or partnership, by reason of anything forbidden or declared to be unlawful" by such act, may recover twofold damages, arises where the injury has directly resulted from the fact of the existence of the trust, that is, where the business or property has directly sustained injury solely by reason of the restrictions in trade or commerce which are fostered by such trust or combination. One whose business or property has been injured cannot maintain an action under such law if the injury, although directly the result of the wrongful acts of the trust or the constituent members thereof, did not arise by reason of the restrictions in trade or commerce carried out by such trust or combination.

ID.—ALLEGATIONS AS TO TRUST—MATTERS OF INDUCEMENT.—The averments in such complaint as to the alleged trust are wholly immaterial to the gist of the complaint,—namely, the wrongful acts whereby the defendants, having combined and conspired together for that purpose, but not as a trust or combination in restraint of trade, caused the committee to break its contract with the plaintiff. At best such averments can be regarded as nothing more than matter of inducement, explanatory to some extent, perhaps, of the gist of the complaint.

ID.—COMPLAINT—SUFFICIENCY OF STATEMENT OF TORT.—While such complaint is not good under the anti-trust act, it sufficiently states an actionable wrong against the defendants to fortify the pleading against the force of a general demurrer, and the measure of damages is the actual detriment he has suffered by reason of the wrong.

ID.—PURCHASER READY AND ABLE—ALLEGATION CONCERNING.—It is not necessary for the plaintiff in such action to allege that at the time the sale was prevented he had procured a purchaser, ready, willing, and able to purchase for the amount and upon the terms prescribed, where it appears that the only step necessary to the procurement was in concluding the negotiations, that is, in consummating or crystallizing the negotiations into an agreement.

ID.—EXCLUSIVE RIGHT OF BROKER TO SELL—ALLEGATION REGARDING.— Nor is it necessary to allege that the plaintiff had the exclusive right to sell the property during the life of his contract, or that the committee in its contract with him did not reserve to itself the right to make a sale within that time.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A Sturtevant, Judge.

The facts are stated in the opinion of the court.

Heim Goldman, for Appellant.

D. Freidenrich, for Respondents.

HART, J.—This is an appeal from a judgment entered upon an order sustaining a demurrer to the second amended complaint, without leave to amend.

The demurrer is both general and special, and thus the complaint is challenged not only for want of sufficient facts, but upon the ground that it is ambiguous, uncertain, and unintelligible.

The object of the action is to obtain judgment for damages alleged to have been inflicted upon the plaintiff by the defendants by wrongfully and fraudulently, so it is charged, preventing him from consummating the sale of certain real property, devoted to the growing of wine grapes, for which sale the owner of said property agreed to pay him, as compensation, the sum of twenty-five thousand dollars.

The complaint, which is a voluminous pleading, first alleges that the plaintiff has been, for many years prior to, and was, at the time of the commencement of this action, engaged in the business of buying, selling, and dealing in real estate, in this state; that the defendants are and for a long time have been stockholders in the Italian-American Bank, a corpora-

tion engaged in the banking business in the city of San Fran-cisco; that both said bank and the plaintiff were members of the San Francisco real estate board; that, while the plaintiff was a member of said board, he preferred charges against the said bank and asked that said bank be expelled from member-ship of said board.

The complaint then, with much particularity and detail, and substantially following the material language of the pro-visions of the state anti-trust law, known as the "Cartwright Act" (Stats. 1907, p. 984; amended; Stats. 1909, p. 593), proceeds to charge that, prior to September 1, 1910, the de-fendants, in defiance of the provisions of said anti-trust law, "combined and confederated themselves together and organ-ized a trust and combination for the purpose of dominating, controlling and regulating the wine industry in California and also the business of raising, treating, storing, distilling, and handling grapes and the products thereof in the state of California, and also for the purpose of dominating, con-trolling, and regulating the purchase and sale of vineyards and lands producing and capable of producing grapes within the state of California and which said trust has ever since been continued by them; . . .; that it is a combination by which the defendants have combined their capital, skill, acts and influence for the purpose of creating and carrying out re-strictions in trade and commerce." In short, it is alleged that the defendants have combined together for the purpose of securing and maintaining a monopoly of the wine industry and of lands suitable to the growing and cultivation of wine grapes in California, and to so manage and conduct such com-bination or trust as to make it impossible for independent wine growers to compete in the sale of wines and thus and thereby prevent free and unrestricted competition in the manufacture and sale of wines in the state of California.

The gist of the complaint is then set out, in substance as follows, borrowing the synoptical statement thereof contained in the brief of the respondents: "That (as before shown) the bank was an associate member of the San Francisco real estate board, of which board plaintiff was an active member, and that plaintiff preferred charges against the bank and asked that it be expelled from membership in the board; that this greatly angered and provoked defendants and they there-

upon determined to oppress, boycott, harass, and ruin plaintiff, to destroy his business, prevent him from making sales to purchasers and prevent prospective purchasers from dealing with him; that to carry out this purpose, they mutually agreed and bound themselves to boycott plaintiff, to injure and destroy his business, prevent him from acting as agent or broker in the purchase or sale of real property or from carrying on his real estate business or from earning any money from his business; that plaintiff was employed by the Bond Holders' Committee of the California Consolidated Vineyard Co., a corporation, as broker, to sell certain described vineyards; that as such broker, plaintiff offered the property for sale to the California Wine Association, which association considered it favorably and was about to conclude a deal for the purchase of the property when defendants learned of the negotiations; that thereupon they intimidated and coerced the bondholders' committee to sell the vineyards to the individual defendants directly or to the companies controlled by them and not through the agency of plaintiff; that the bondholders' committee sold the vineyards to the defendant California Wine Association for the price and upon the terms fixed by the defendants; that the sale was made ostensibly to the California Wine Association but in fact the vineyards were purchased by the defendants and the title thereto was vested in the Italian-Swiss Colony; that this was done for the purpose of concealing the real transaction and of defrauding the plaintiff out of his commission; that the bondholders' committee secretly agreed with the defendants to allow the title to the vineyards to ostensibly vest in the Italian-Swiss Colony, although the property in fact passed to the California Wine Association; that the sale was manipulated so as to make it appear that it was consummated after the expiration of plaintiff's agreement, whereas in fact everything concerning it was arranged and agreed upon before the expiration of the time.''

Although the plaintiff avers that the actual loss or detriment suffered by him by reason of the alleged wrongful acts of the defendants amounted to the sum of twenty-five thousand dollars, he nevertheless states in his complaint ''that, by virtue of the statute in such cases made and provided the plaintiff is entitled to recover twice the amount of damages

sustained by him, namely, the sum of fifty thousand dollars,'' for which amount he prays judgment.

It is conceived that the complaint states a cause of action against the defendants.

The actual damage sustained by the plaintiff, by reason of the alleged acts of the defendants, was, according to the complaint, the sum of twenty-five thousand dollars; but it appears that the plaintiff conceived that he had a cause of action against the defendants by reason of the acts of which he accuses them, based upon an alleged violation, by the defendants, of the provisions of the so-called Cartwright anti-trust law. This is clearly to be inferred from the fact that the complaint charges the defendants with having organized themselves into a combination whose purpose is to prevent free and unrestricted competition in the business of manufacturing and selling wines in California, and from the further fact that, evidently, in pursuance of section 11 of the Cartwright Act, he asks for double the damages alleged to have been actually sustained by him, said section of said act providing that any person injured ''in his business or property by any other person or corporation or association or partnership, by reason of anything forbidden or declared to be unlawful by this act, may sue therefor . . ., without respect to the amount in controversy, and to recover twofold the damages by him sustained,'' etc.

It is very clear, however, that the complaint does not state a cause of action in favor of the plaintiff under the provisions of the anti-trust law. The averments involving the charge of an unlawful combination by the defendants contrary to the provisions of the anti-trust law merely disclose, if anything at all, that a trust has been organized by the latter for the purpose of preventing free and unrestricted competition in the wine industry in this state. It is true that it is declared that one of the objects of the alleged combination is to dominate and control ''the purchase and sale of vineyards and lands producing and capable of producing grapes within the state of California,'' but this is a mere incident—an important one, it may be conceded—of the central purpose of the alleged trust, viz.: to control the entire wine industry of the state. There is nothing to show, if indeed, such a showing were possible under the anti-trust act as to that line of

business, that the defendants had confederated together for
the purpose of preventing free and unhampered competition
in the general business of buying and selling real estate (the
business in which the plaintiff is engaged), and hence it can-
not be said that the alleged trust or combination, by reason
of its existence as such, had, in any manner, injured the
plaintiff in "business or property," within the meaning of
the provisions of the anti-trust act.  To be "injured in busi-
ness or property," within the contemplation of said law, as
we understand it, is where the injury has *directly* resulted
from the fact of the existence of the trust—that is to say,
where the business or property has directly sustained injury
solely by reason of the restrictions in trade or commerce
which are fostered by such trust or combination.  In other
words, while one whose business or property has been injured
solely because of the restrictions in trade carried out by a
trust organized and maintained for that purpose may main-
tain an action under the provisions of the anti-trust law for
double the damages he has actually suffered from the injury
so inflicted, yet he could not maintain an action based upon
said law if the injury, although directly the result of the
wrongful acts of the trust or the constituent members thereof,
did not arise by reason of the restrictions in trade or com-
merce carried out by such trust or combination.  So, in the
case at bar, it is manifest from the circumstances of the
transaction complained of as divulged by the complaint that
the injury, if any, sustained by the plaintiff in said transac-
tion did not occur as the direct result of the restrictions in
trade or commerce which it is charged are being maintained
by the alleged trust or combination, but must have been di-
rectly occasioned, if at all, by the wrongful acts either of the
trust itself, as a corporate entity, not acting within the scope
of the purposes of its organization, or by the defendants, as
individuals, combined together, it may be, for that express
purpose.  It follows that the averments as to the alleged trust
are wholly immaterial to the gist of the complaint or the
essential ground upon which the plaintiff must rely for a re-
covery, viz.: the wrongful acts whereby the defendants, hav-
ing combined and conspired together for that purpose, but
not as a trust or combination in restraint of trade, caused
the bondholders' committee to break its contract with him.

23 Cal. App.—28

At best, from the standpoint of pleading, said averments can be regarded as nothing more than matter of inducement, explanatory to some extent perhaps of the gist of the complaint.

It now remains to be seen whether the complaint states a cause of action against the defendants as individuals or as members of the unlawful trust above referred to and in favor of the plaintiff.

According to the complaint, the plaintiff, by his contract with the committee was employed and authorized, as its agent and broker, to sell for it within the period covered by the months of August, September, and October, 1910, certain lands or vineyards. As shown, it is alleged that, during the period of time just mentioned, the plaintiff "submitted the sale of said vineyards to the California Wine Association and said . . . association considered favorably the offer of plaintiff for the sale of said vineyards and was anxious to purchase the same and was about to conclude a deal for the purchase of said properties," when the defendants, having heard of said negotiations, wrongfully interfered with and prevented the sale being made through the agency of the plaintiff, in the manner as described by the succeeding averments.

The fair, reasonable, and rational inference from the foregoing averments and the averments following is that the plaintiff had persuaded the California Wine Association to purchase the properties, that said association had fully decided to purchase them and was ready and prepared to enter into an agreement to that end, when the defendants, by wrongful means—threats, intimidation, and coercion—compelled the committee to refuse to effect such sale through the agency of plaintiff and thereby prevented the latter from carrying out and executing the deal with said association. If this be true (and the demurrer admits the verity of the vital allegations of the complaint), then, in our judgment the defendants were guilty of an actionable wrong against the plaintiff. But the defendants contend that, in order to have stated a cause of action, the plaintiff must have disclosed by his complaint that, at the time the defendants are alleged to have interfered with said negotiations and thus prevented the sale from being consummated through the instrumentality of the plaintiff, he had *procured* in said association a purchaser of

said properties ready, willing, and able to purchase the same for the amount and upon the terms prescribed by said committee. We do not agree with this contention. While we do not think that it may be inferred from the complaint that the plaintiff had, strictly speaking, *procured* a purchaser ready, willing, and able to purchase the properties, it is, as before stated, clear from the averments that he was, when interfered with by the defendants, conducting negotiations with a party ready, willing, and able to purchase, and that the only other step necessary to the *procurement* of such a purchaser was. in *concluding* the negotiations—that is, in consummating or crystallizing the negotiations into an agreement. This, the complaint plainly states, would have been accomplished but for the wrongful acts of the defendants in preventing the committee from making the sale through the plaintiff and herein lies the tort of the defendant from which the damage suffered by the plaintiff ensued. That, in point of fact, the wine association was ready, willing, and able to purchase the properties, is shown by the statement in the complaint that it did, subsequent to its negotiations with the plaintiff, purchase the same.

Nor, as the defendants contend is true, was it necessary to show that the plaintiff, during the months of August, September, and October, 1910, had the exclusive right to sell the properties, or that the committee did not, in its contract with the plaintiff, reserve to itself the right to sell said properties during the life of the plaintiff's contract. If the committee had conferred upon a dozen different brokers like authority, each contract covering precisely the same period, and one of the brokers had succeeded in persuading some party to purchase the same upon the terms stipulated by the principal, and, when the broker was about to consummate the deal, a third party, by unlawful methods or means, had prevented the consummation of the deal through such broker, the latter would have his right of action against the tort-feasor, notwithstanding that other brokers were vested with authority to sell the same properties during the same period of time. In other words, merely because several brokers had equal authority to procure for the owner a purchaser of the same property during the same period of time would give no one the right wrongfully to interfere with a sale of such property

which one of the brokers was about to make. And, of course, the same proposititon is no less true as to the owner of the property where he reserves the right to sell the property himself during the life of the contract with his broker. These propositions are too self-evident to require the citation of authorities to substantiate them.

Our conclusion is: That the complaint is not and cannot, from its nature, be based upon the Cartwright anti-trust act, but that 'the plaintiff has sufficiently stated an actionable wrong against the defendants to fortify the complaint against the force of a general demurrer, and that the measure of damages in such case is, obviously, the actual detriment he has suffered by reason of said wrong.

The judgment is reversed, with directions to the court below to overrule the general demurrer.

Chipman, P. J., and Burnett, J., concurred.