Maurice F. Simon, Appellant and Respondent, *v.* Noma Electric Corporation et al., Respondents and Appellants, et al., Defendants.

Argued June 5, 1944; decided July 19, 1944.

I. *Maurice Wormser, Samuel Rubin* and *David J. Colton* for plaintiff-appellant and respondent. I. The agreement with plaintiff's assignor was made by both Marr and the sales corporation and the intent of the parties was clearly to bind the sales corporation, as well as Marr. II. Marr's authority to bind the sales corporation was clearly established. (*Harms Co.* v. *Michel Brewing Co.,* 228 N. Y. 263; *Ætna Explosives Co.* v. *Bassick,* 176 App. Div. 577, 220 N. Y. 767; *Hall* v. *Herter Bros.,* 90 Hun 280, 157 N. Y. 694; *Powers* v. *Schlicht Heat & Power Co.,* 23 App. Div. 380, 165 N. Y. 662.) III. There was adequate proof to support the finding of conspiracy. (*Hornstein* v. *Podwitz,* 254 N. Y. 443; *Posner Co.* v. *Jackson,* 223 N. Y. 325; *Campbell* v. *Gates,* 236 N. Y. 457; *Lamb* v. *Cheney & Son,* 227 N. Y. 418.)

*Philip Warshaw* and *William L. Schwartz* for defendants-respondents and appellants. I. Plaintiff failed to establish a brokerage contract between his assignor and the defendant Air Conditioners Sales Corporation. (*Ditmars* v. *Renz,* 269 N. Y. 191; *Curry* v. *American Railway Express Co.,* 214 App. Div. 744; *Ballston T. R. R. Co.* v. *Hudson Val. R. Co.,* 76 App. Div. 184; *Knapp* v. *Rochester Dog Protective Assn.,* 235 App. Div. 436; *Chard* v. *Ryan-Parker Construction Co.,* 182 App. Div. 455; *Noyes* v. *Irving Trust Co.,* 250 App. Div. 274; *Tobin* v. *Roaring Creek & C. R. Co.,* 86 F. 1020.) II. Planitiff has failed to establish the conspiracy cause of action. (*Burgess Bros. Co.* v. *Stewart,* 112 Misc. 347, 194 App. Div. 913; *Green* v. *Davies,* 182 N. Y. 499; *Brown* v. *Yaspan,* 256 App. Div.

991; *Place* v. *Minster,* 65 N. Y. 89; *Rhodes* v. *Ocean Accident & Guarantee Corp.,* 235 App. Div. 340; *Rosenzweig* v. *Wecksler,* 237 App. Div. 65; *Hornstein* v. *Podwitz,* 254 N. Y. 443; *Rafalsky* v. *Goldner,* 18 N. Y. S. 2d 655.)

DESMOND, J. For convenience we will refer to plaintiff's assignor as " plaintiff ". The complaint sets up four alleged causes of action, only two of which survive for our consideration. The first count, which runs against defendants Air Conditioners Sales Corporation, Air Conditioners, Inc., and Marr, alleges a promise by those defendants to plaintiff to pay him a commission for services to be performed by him. Those services, he alleges, were by way of arranging introductions to persons, firms or corporations in a position to furnish financial assistance to those three defendants. All this had to do with a business enterprise involving the manufacture and sale by defendant Air Conditioners Sales Corporation of patented electric heaters. The agreed commission, says the complaint, was to be 10% of the amount of any such financial assistance that might thus accrue to those defendants. Plaintiff avers that he duly performed all the conditions of his employment and that large sums of money came to those three defendants thereby, but that they have refused to pay him his commission. The other cause of action is pleaded against the three defendants just mentioned, also against defendants Noma Electric Corporation and Henri Sadacca. That count accuses all five defendants of conspiring to deprive plaintiff of those same commissions, and alleges that plaintiff by that alleged wrong has been damaged in the same amount as claimed in the other cause of action above described.

On the trial the complaint was dismissed, by consent, as against defendant Air Conditioners, Inc., and that corporation is out of the case. The Trial Justice, sitting without a jury, awarded plaintiff damages of $7,311.87 against defendant Marr, and of $6,736.87 against the three remaining defendants, on the two causes of action. The damages were computed thus: defendant Sadacca, an investor, having become interested in the business prospects of defendant Air Conditioners Sales Corporation, purchased its outstanding stock for $500 and arranged, through defendant Noma Electric Corporation and through an indi-

vidual, loans to Air Conditioners Sales Corporation totalling about $67,000. Out of those moneys Marr received $5,750 (as commissions on sales of merchandise) from Air Conditioners Sales Corporation. The awards of damages amount to 10% of those sums. The Trial Justice's opinion, which serves as a decision, contains findings to the effect that the agreement was made as pleaded in the complaint, that defendant Marr, then an officer and director of Air Conditioners Sales Corporation, acted for himself as well as for that corporation in entering into the agreement with plaintiff, that plaintiff performed the services required of him and that those services resulted in the accrual to that corporation and to Marr of the amounts above listed. As to the conspiracy cause of action, the Trial Court held that a conspiracy to deprive plaintiff of his commissions had been established. On appeal, four of the Appellate Division Justices were of the opinion that the loans made by defendant Noma to defendant Air Conditioners Sales Corporation were not within the contemplation of the agreement since, when those loans were made, ownership of the latter corporation had passed from Marr and his associates to the Noma Corporation. The agreement made by Marr, said the Appellate Division majority, could not reasonably be thought to cover those later accruals which were of no benefit to Marr who no longer had any interest in Air Conditioners Sales Corporation. The dissenting Justice in the Appellate Division voted to reverse and dismiss the complaint on the ground that no authority had been shown in Marr to make the agreement on behalf of Air Conditioners Sales Corporation and that the agreement itself was too vague to be enforcible. The judgment was thereupon modified by the Appellate Division by reducing it to $625, thus limiting plaintiff's commissions to 10% of the amount paid by Sadacca and his corporation, Noma, for the purchase of the Air Conditioners Sales stock, plus 10% of the compensation received by Marr out of the moneys accrued to Air Conditioners Sales Corporation, with no commission to plaintiff on the loans. After the Appellate Division decision, plaintiff " released " defendant Marr, alone, from liability on the judgment. Plaintiff appeals here, complaining of the reduction by the Appellate Division of his recovery. Defendants

Noma, Sadacca and Air Conditioners Sales Corporation appeal and pray that the complaint be dismissed for failure of proof.

We find evidence in the record to justify the finding that an agreement was made between plaintiff and *Marr* looking to the payment to plaintiff of compensation for his services in putting in train any series of events that would bring new moneys to Marr or to Air Conditioners Sales Corporation. Proof there is, also, that plaintiff did his work, that new funds were made available as a result thereof, also that defendants Noma and Sadacca conspired to cheat plaintiff out of his earnings. The difficulty is that there is no proof at all that Marr, in dealing with plaintiff, had a right to, or purported or intended to, bind Air Conditioners Sales Corporation. Marr was the inventor of a patented electric heater and Air Conditioners Sales Corporation had an exclusive world-wide license to manufacture and sell it. Marr was vice-president of Air Conditioners Sales Corporation. He was not a stockholder of record but testified that he was entitled to 20% interest in that corporation. He had invested, he testified, nothing but his time. The record does not show who the other officers were or who, if anyone besides Marr, was active in its affairs. The corporation was in financial difficulties and had previously engaged one Weller to procure some new financing but Weller had not succeeded in doing so. Marr then engaged plaintiff to do what was necessary to interest financiers, for a commission of 10%. Plaintiff interested defendant Sadacca, who was active in defendant Noma and in another corporation, both in the electrical appliance business. The original idea, on which broker Weller had worked and on which plaintiff at first worked, was the formation of a new corporation to take over the business of Air Conditioners Sales Corporation. Sadacca proposed, instead, that he, or Noma, purchase the stock of Air Conditioners Sales Corporation and take over its business. That was eventually done and Air Conditioners Sales Corporation became a wholly-owned subsidiary of defendant Noma. The benefits which accrued to Air Conditioners Sales Corporation were made available to it after Sadacca and his associates had bought, for $500, from one Kearn, all the issued stock of Air Conditioners Sales Corporation. The former owner of that stock got the $500 and Marr got a salary, for a time, from the newly financed

Air Conditioners Sales Corporation. There is some evidence that Marr had been authorized by the corporation's board of directors to make the earlier arrangement with broker Weller. There is no evidence of any such authorization by the directors for the deal made by Marr with plaintiff. The scope of Marr's general authority is not shown; but at one point he himself testified that he told plaintiff that he (Marr) " was not a contractual officer of the corporation but  *  * . *  would attempt to get the officers to consent to it ". There is no showing of any such consent or of any subsequent ratification. Indeed, we do not know who the officers or directors were, other than Marr. In a confidential memorandum or prospectus, apparently prepared by the first broker, Weller, but handed by Marr to plaintiff and put in evidence by the latter, this appears: " Mr. Marr is a stockholder, director and Vice President of Air Conditioners Sales Corporation and of Air Conditioners, Inc., and while acting in advisory capacity he is not employed by either corporation. He resides in New York City and has as a matter of convenience and for the past year and one half, maintained his office in the premises occupied by Air Conditioners Sales Corporation."

Furthermore, the record contains no substantial proof that Marr ever intended to bind Air Conditioners Sales Corporation. The original agreement between plaintiff and Marr was oral. The confirming letter written by plaintiff is addressed to Marr, individually. It states plaintiff's understanding that he is to receive 10% of any and all benefits accruing to " you [Marr] or your companies " by reason of introductions to be arranged by plaintiff. Later, after Sadacca had entered the picture and had expressed some dissatisfaction with the size of plaintiff's percentage, plaintiff wrote a letter to Sadacca in which he referred to his " arrangements for commissions with him [Marr] ", and, again, of his " arrangements with Mr. Marr ". Plaintiff's testimony that he was dealing with Marr " individually and as a representative of the corporations of which he was an officer and director " is purely conclusory. The best that can be said for plaintiff's proofs is that they show a deal made with Marr for 10% commission on all new moneys that should come to Marr or the corporation through

plaintiff's efforts. We cannot accept that, without anything more, as sufficient basis for holding the corporation liable.

All that is written above relates to the liability of Air Conditioners Sales Corporation on the first, or commission, cause of action. We come now to the conspiracy theory on which recovery has been had against all the defendants. The alleged conspiracy is one to deprive plaintiff of his justly earned compensation. Obviously, since we are holding that plaintiff has no case against Air Conditioners Sales Corporation, he has lost nothing by any effort to thwart him in collecting from that corporation. The gist of such a case is damage, not the mere conspiring. (*Jones* v. *Baker,* 7 Cow. 445.) True, plaintiff pleaded and proved that the conspirators tried to keep him from getting his commission from defendant Marr, also. Plaintiff's recovery of a judgment against Marr does not *ipso facto* make it impossible for him to recover also on a cause of action against others who conspired to induce Marr to breach his contract with plaintiff. (*Hornstein* v. *Podwitz,* 254 N. Y. 443, 448, 449.) But to recover on the cause of action for wrongful interference, by the other defendants, with his agreement with Marr, plaintiff had to prove damages resulting from that interference. (*Campbell* v. *Gates,* 236 N. Y. 457, 460; *Associated Flour Haulers, etc.,* v. *Hoffman,* 282 N. Y. 173, 180, 181.) No such damages were proven here, since plaintiff was successful in obtaining a judgment against Marr for the amount of the commissions due from Marr. (See *Shapiro* v. *Greenwich Savings Bank,* 266 App. Div. 359, affd. 293 N. Y. 724.) We need not consider what effect, if any, plaintiff's subsequent voluntary extinguishment of that judgment against Marr might have, under other circumstances, on plaintiff's cause of action against the other defendants for inducing Marr to breach. That attempted interference is not, on this record, shown to have resulted in any damages.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and THACHER, JJ., concur.

Judgments reversed, etc.