## B. HOWARD RICHARDS, INC. *v.* LOUIS SHEARER

[No. 81, October Term, 1945.]

*Decided February 8, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Eldridge Hood Young* for the appellant.

*William R. Semans* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This suit was brought in the Baltimore City Court by the appellant against the appellee. The claim for damages is based upon the allegations in the declaration that the plaintiff, a real estate brokerage corporation, had a contract with the Kaufman-Goldnamer Company, owner of No. 15 West Lexington Street, Baltimore, to receive from the company real estate commissions if the plaintiff obtained a purchaser for this business property, at a price of $130,000; that the appellant offered the property to the appellee and while negotiations were continuing, the appellee "wickedly and unlawfully contriving to injure the plaintiff by inducing the said Kaufman-Goldnamer Co. to breach its agreement with the plaintiff to pay brokerage or commissions to the said plaintiff for the sale of said property amounting to some $4,400.00 did procure the attorney of the defendant to offer said Kaufman-Goldnamer Co., without the knowledge or consent of the plaintiff, $125,000 (being approximately $130,000 less $4,400 brokerage or commission) for said property and did so purchase the same at and for said sum." Thereby the appellant claims that it lost its

commissions, and that the appellee is liable to it for damages in procuring the breach of its contract with the owner.

The appellee filed a general issue plea, the case was tried by a jury and at the conclusion of the plaintiff's case, an instructed verdict was found in favor of the appellee and a judgment entered on this verdict in favor of the appellee for costs. From this judgment, the appeal is taken.

Before the jury was sworn, the declaration was amended by interlineation, the change being to correct a date. No further pleading was filed by the appellee, and in its brief, the appellant claims that the verdict and judgment was a nullity for this reason. However, the appellant proceeded to trial voluntarily without raising the question and such action had been generally held to cure such informality in the pleadings. *Soper v. Jones,* 56 Md. 503 and cases as cited. The appellant has evidently also reached the same conclusion, as its counsel specifically abandoned the point in his oral argument before this Court.

The theory upon which this action is brought was first established in the English master and servant case of *Lumley v. Gye,* 2 El. & Bl. 216. That was a case brought by the lessee of one theatre against another theatre to recover damages for inducing a singer to break her contract to sing at the first theatre in order to sing at the second. That case has been followed in a number of decisions in this Court involving the breach of ordinary contracts. One of these is *Gore v. Condon,* 87 Md. 368, 39 A. 1042, 1044, where the wrong alleged was the interference by the defendant, as the pretended holder of a fraudulent mortgage with the right of the plaintiff to collect rents from her tenants. The Court said that the right to maintain such an action could be sustained "upon the doctrine that a man who induces one of two parties to a contract to break it, intending thereby to injure the other, or to obtain a benefit for

himself, does the other an actionable wrong." Mr. William T. Brantley, the distinguished lawyer and author, who was for many years Reporter to this Court, wrote a comprehensive note to this case which is found in the appendix to 87 Md. beginning at page 739.

In the case of *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 107 Md. 556, 69 A. 405, the dairy company sued the ice company for causing another ice company to break a contract between it and the dairy company, as a result of which action, the dairy was unable to obtain ice from the third company and, therefore, had to purchase ice from the defendant on less advantageous terms. In that case, Chief Judge Boyd discussed many other cases in this Court, and from other jurisdictions, and came to the conclusion that the declaration stated an actionable wrong, even if there were no express allegation of malice. See also the later cases of *Knocke v. Standard Oil Co.*, 138 Md. 278, 282, 113 A. 754, and *Goldman v. Harford Road Building Association*, 150 Md. 677, 681, 133 A. 843.

The difficulty in the appellant's case is not with the law but with the facts. The evidence shows that on June 13, 1940, the Kaufman-Goldnamer Company wrote appellant a letter supplementing a previous telephone conversation, giving the appellant the exclusive agency for sale and rental purposes of No. 15 West Lexington Street for a period of three months from May 22, 1940, at a price satisfactory to the owner. The letter stated that in no event was the owner liable for any commission unless a contract for the sale or rental of the property was accepted by the owner through appellant's office during the option period. Mr. Cohen, who was the president of the appellant, saw the appellee during the option period but the best he was able to get from the latter at that time, was an offer of $100,000. Subsequently, he said Mr. Shearer went up to $115,000, then to $120,000 and then to $125,000 gross. These conversations and negotiations went on for a period of more than four years. In July, 1943, Mr. Cohen asked the owner for a sale figure on the

property, and on July 22, 1943, the owner wrote that it would seriously consider selling the property for $125,000 net to it. The appellant advised that it had a prospect, but thought it would be unable to get him higher than $120,000 gross and asked if the owner would consider a lower figure. To this the owner replied on August 16, 1943, that $125,000 net was the lowest figure that would be considered. Other brokers in Baltimore had been given the same figure, so that appellant was only one of a number of brokers who had an opportunity to sell this property at $125,000 net. Mr. Cohen testified that he told Mr. Shearer that the owner (whose name he had divulged) would take only $125,000 net or $130,000 gross. This was in April or May, 1944. Mr. Shearer asked Mr. Cohen to obtain a commitment as to the size of the mortgage which could be obtained on the property, and Mr. Cohen obtained such a commitment for $90,000. Mr. Shearer left Mr. Cohen's office, saying he would give the matter further thought and would let Mr. Cohen hear from him, but nothing further was heard. This was about the 21st or 22nd of May, 1944. Subsequently, on July 27, 1944, the Kaufman-Goldnamer Company agreed with Isaac Shearer, brother of the appellee, to sell him the property in fee for $124,000. This contract was for the benefit of the appellee and his brother equally, and was subsequently carried out by a conveyance. The owner of the property was not informed by the appellant of the name of his prospect, Louis Shearer, but Shearer was told the name of the owner.

On these facts, it appears that the appellant in 1944 had no contract with the owner to sell the property for any figure, although it did have an arrangement by which it would obtain the usual commissions if it brought a purchaser to the owner who would pay him $125,000 net or $130,000 gross. Appellant did not produce such a purchaser, so that it had no contract which the appellee could have caused the owner to break. Appellant was in the same situation as a number of other brokers who

might have had customers or prospects willing to pay less than the figure authorized by its owner. Neither appellant nor any other broker, who did have or might have had such prospects, could claim a contract with the owner. The contract would exist only when the prospect had made an offer in accordance with the terms, which the owner said it was willing to accept.

Nor do we think there is anything in the record to show that the appellee induced the owner to sell the property at a lower price in order to save commissions. The appellee had never offered to pay through appellant more than $120,000 net or $125,000 gross so that it was not a question of saving the commissions at all. The difference between the appellee and the owner, as quoted by the appellant, was that between $125,000 and $130,000 gross. The appellee conducted negotiations, through other means, directly with the owner and eventually arrived at a figure of $124,000 net, which was less than the lowest figure quoted to him by the appellant. It does not appear that appellee had ever been willing to go as high as he finally did, until the contract was made.

It is our conclusion, therefore, that the appellant has failed to substantiate its case, both with respect to the establishment of a contract which it had, and with respect to the wicked and unlawful contrivance by the appellee to injure it, by inducing a breach of contract. The trial court was, therefore, right in directing the jury to bring in a verdict for the appellee and to enter a judgment for appellee for costs and its action will be affirmed.

*Judgment affirmed, with costs.*