[Civ. No. 17432.   Second Dist., Div. One.   June 22, 1950.]

CALIFORNIA AUTO COURT ASSOCIATION, INC., Appellant, v. MAX COHN et al., Defendants; JACK OSTROW (True Name Jack Ostroff) et al., Respondents.

Reynolds, Painter & Cherniss for Appellant.

George S. Gordon for Respondents.

WHITE, P. J.—This appeal is from a judgment rendered by the trial court pursuant to an order sustaining a general and special demurrer of defendants Ostroff and Marks to plaintiff's amended complaint without leave to amend. The complaint is for damages arising out of an alleged conspiracy

of defendants to deprive plaintiff corporation of a real estate broker's commission.

The complaint charged that plaintiff is a real estate broker and that in January, 1948, at the resquest of defendant Jack Marks, plaintiff showed said Jack Marks a number of motels that plaintiff had listed for sale. On November 26, 1948, defendant Max Cohn employed plaintiff by written agreement whereby the latter was to sell the Mohawk Motel, of which defendant Max Cohn was then the owner, for $78,000, plaintiff to receive a 5 per cent commission, or $3,900. Plaintiff immediately commenced advertising the motel for sale. December 4, 1948, plaintiff introduced defendant Marks to defendants Max Cohn and Mary Cohn, husband and wife, who, together with plaintiff's agents, showed defendant Marks the Mohawk Motel. Defendant Marks stated that he was interested in the motel but before purchasing it, he wished to consult with his relatives and that he would contact plaintiff immediately if he and his relatives decided to buy it. The complaint further alleged that defendant Marks then consulted defendant Naomi Marks, his wife, and defendants Ostroff, his father-in-law and mother-in-law, and that all of the defendants, knowing that plaintiff was entitled to a commission and in order "to unlawfully cheat, wrong and defraud plaintiff out of a commission of $3900.00," entered into a conspiracy, and without the knowledge or consent of plaintiff, negotiated together and directly with each other to place the title of the Mohawk Motel in the names of defendants Ostroff at a price of $74,100 ($78,000 less the commission of $3,900 due plaintiff). That the defendants opened an escrow on December 8, 1948, wherein defendant Cohn sold the Mohawk Motel to defendants Marks and Ostroff, title being vested on December 16, 1948, in the names of defendants Ostroff in order to make it appear that they were the bona fide purchasers thereof, but that in reality defendants Ostroff hold it in trust for defendants Marks who are the true purchasers. That plaintiff continued to advertise the motel and to show it to prospective purchasers with the consent of the Cohns until the 16th of December, when plaintiff learned through sources other than the defendants of the alleged fraudulent transaction between them. That on December 16th defendants Marks commenced operating and managing the motel and referred to it as their own. That by reason of their acts, defendants unjusifiably interferred with plaintiff's right to pursue its lawful business, effected a breach of the contract between plaintiff and defend-

ant Max Cohn, and deprived plaintiff of its commission of $3,900.

Defendants Ostroff and Marks demurred generally to the complaint on the ground that it failed to state a cause of action, and specially, on the grounds of ambiguity, uncertainty and unintelligibility, which demurrer was sustained without leave to amend and judgment entered pursuant thereto. The action against defendants Cohn is still pending in the trial court. Plaintiff has appealed from the judgment in favor of defendants Ostroff and Marks.

Appellant contends that a cause of action for loss of commissions exists against third persons in favor of a real estate broker, who is deprived of such commissions as a result of a conspiracy between such persons and the broker's employer, and in support of such contention appellant points out:

(1) That the right to pursue a lawful occupation is a fundamental right which courts protect;

(2) That the right to perform a contract and to obtain the benefits and profits therefrom is a property right protected by law; and

(3) Unjustifiable interference by a third party with contractual obligations is actionable.

Respondents admit that point (1) is a general maxim of law but simply state that "nothing cited and nothing in the complaint indicates any interference with the plaintiff's right to pursue its occupation of real estate broker." Assuming the facts alleged in the complaint to be true (and the demurrer admits the verity of the vital allegations of the complaint (*Krigbaum* v. *Sbarbaro*, 23 Cal.App. 427 [138 P. 364]), it is too apparent to merit further discussion that respondents did interfere with plaintiff's pursuit of its occupation as a real estate broker.

As to point (2), respondents contend that their conduct was privileged as a legitimate exercise of their own right to purchase property directly from the owner, citing *Sweeley* v. *Gordon*, 47 Cal.App.2d 385 [118 P.2d 16]. The case of *Sweeley* v. *Gordon* involved an oral contract of employment and the defense of the statute of frauds and is not pertinent to the issue here involved.

Respondents argue that point (3) is applicable only if there was a definite and settled contract and the means of interference was by an unlawful action. Respondents then state there was no definite and settled contract inasmuch as plaintiff was not entitled to commissions until it had produced

a buyer. While it is true the procurement of a ready, willing, and able purchaser is a condition precedent to the duty of an owner to pay a real estate broker's commission, the alleged acts of the respondents prevented that condition from happening, and they cannot rely on their own wrongful acts as a basis for immunity from liability. Furthermore, it is clear from the complaint that the only other step necessary to the procurement of a ready, willing, and able purchaser was in concluding the negotiations, which defendants prevented. (*Krigbaum* v. *Sbarbaro, supra.*)

As to the necessity of intereference by unlawful action, respondents contend the complaint contains a bare allegation of conspiracy and is therefore insufficient. The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. The cause of action is the damage suffered. Each participant in the wrongful act is responsible as a joint tort feasor for all damages ensuing from the wrong, regardless of whether or not he was a direct actor and of the degree of his activity. (*Mox Incorporated* v. *Woods*, 202 Cal. 675 [262 P. 302].) Furthermore, because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. (*Anderson* v. *Thacher*, 76 Cal.App.2d 50, 72 [172 P.2d 533].) The complaint contained allegations of acts of the respondents in detail and was not confined to a "bare" allegation of conspiracy. Respondents seek to devaluate certain of the cases cited by appellant by pointing out that the actions therein were for injunctive relief rather than for damages. Unjustifiable interference with contractual relations is not remediable solely by injunctive relief but also in monetary damages. (*Remillard-Dandini Co.* v. *Dandini*, 46 Cal.App.2d 678 [116 P.2d 641].) Respondents further contend that in those instances where damages were awarded, the means by which the breach was obtained were false and wrongful in themselves. In *Imperial Ice Co.* v. *Rossier*, 18 Cal. 2d 33 [112 P.2d 631], it is stated: "In California the case of *Boyson* v. *Thorn, supra* [98 Cal. 578 (33 P. 492, 21 L.R.A. 233)], has been considered by many as establishing the proposition that no action will lie in this state for inducing breach of contract by means which are not otherwise unlawful . . . The

statements to the effect that no interference with contractual relations is actionable if the means employed are otherwise lawful were not necessary to the decision and should be disregarded.''

Eliminating those cases cited by respondents wherein there was no valid and enforceable contract between the owner and the broker, the respondents' position rests on their argument that the complaint shows no damages inasmuch as appellant still has its pending action against the owner for its commission. In 30 American Jurisprudence, Interference, section 20, page 73, we find the following language: ''. . . It has been suggested, however, that a distinction should be made between interference with the performance of executory contracts and interference with the performance of those which have been executed so that nothing remains to be done but to make payment, which the other party is induced to withhold. This view is based upon the theory that the acts complained of do not damage the plaintiff, since he may proceed to collect from the party who has failed to make the payment, *but it has been disapproved.''* (Citing *Hornstein* v. *Podwitz*, 254 N.Y. 443 [173 N.E. 674, 84 A.L.R. 1].) (Emphasis added.) (See, also, annotations, 97 A.L.R. 1273 and 146 A.L.R. 1417 as to real estate broker's commissions.) In the various California cases wherein damages have been awarded or injunctive relief granted for unjustifiable interference with contractual relations, it is apparent that the plaintiff is not confined to an action ex contractu against the party with whom he contracted.

An examination of the complaint, the demurrer filed thereto, and the authorities cited in support thereof impresses us that the complaint states a cause of action and is not vulnerable to the charge of ambiguity, uncertainty, or unintelligibility.

For the foregoing reasons the judgment is reversed with directions to the court below to overrule the demurrer and allow respondents herein a reasonable time within which to answer should they be so advised.

Doran, J., and Drapeau, J., concurred.