HORN *v.* SETH ET AL.

[No. 78, October Term, 1952.]

590

*Decided March 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Louis S. Ashman* and *Arold H. Ripperger,* with whom were *Harry D. Barnes* and *Elroy G. Boyer* on the brief, for appellant.

*Charles M. Huester* for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for $500, entered by the court after a *remittitur* reducing a jury's verdict of $1,000, in a case involving an action by one real estate broker against another for alleged interference with a contract for the payment of commissions. The appeal challenges the action of the court in denying the appellant's motion for judgment N.O.V.

The facts are somewhat complicated but virtually undisputed. In 1946 Mr. and Mrs. Bramble, the owners of a house in Elkton, had listed it for sale with Mrs. Horn, a real estate broker, at a price of $15,500, the broker to be paid a commission of 5%. The listing was "open", that is to say, non-exclusive. She had not succeeded in making a sale, and in May, 1948 the Brambles asked Seth, another real estate broker, to try to procure a purchaser on a non-exclusive basis, at a price of $12,500, the broker to receive a flat commission of

$500.  Seth showed the property to Mr. and Mrs. Lynch on May 18, 1948.  The Lynches asked that they be allowed until Monday evening, May 24, to make up their minds, to which the Brambles agreed.  On Monday morning Mrs. Horn showed the property to a Mr. Troutman, who indicated he was interested in the property and would make an offer later in the day.  Bramble then went to see Seth and asked him if the Lynches were really interested.  Seth called Lynch, who said he would take the property at $12,500, and would have a deposit up before 1 P.M.  Seth so advised Bramble.  Bramble went home and found Mrs. Horn there.  She said Troutman had made a definite offer to take the house at $13,000 and that she had his check for $1,000 as a deposit.  At this point Lynch called Bramble on the telephone, and Bramble told him the price was now $13,000.  Lynch testified he told Bramble he would take it at that figure, and Bramble said "all right".  Bramble did not deny that he made that statement.  A few minutes later, Mrs. Bramble called Lynch back and told him the price was now $13,500.  Lynch then called Seth and told him there was "something funny" going on.  Seth called Bramble and was told the place had been sold.  Seth reported this to Lynch, who asked if he (Seth) had $500 in cash.  When told that he had, Lynch told him to tender this amount to Bramble.  Seth called Bramble and told him he had a $500 deposit on account of the sale to Lynch.  Seth fixed the time of this call at 12:50 P.M., and this was confirmed by Bramble.

Bramble testified, and was corroborated by his wife and son, that Mrs. Horn was in his house when the various calls from Lynch and Seth came in.  She begged him not to sell to Lynch, but to sell to Troutman, and offered to rebate $100 out of her commission of $650 if he would do so.  Mrs. Horn testified that she did not hear Bramble make any committments to Lynch, but on the contrary, heard him say that the property had been sold.  She admitted that she knew the Brambles had given the refusal of the property to Lynch, con-

ditioned upon his putting up a deposit before 1 P.M. She called her lawyer and was advised that if a deposit was not forthcoming by 1 P.M. it would be proper for her to close the deal. After 1 P.M. Troutman came to the house and the $1,000 check was delivered. The property was subsequently transferred to Troutman and the purchase price of $13,000 paid. In the settlement Mrs. Horn received $550 as commission.

It is perfectly clear under the Maryland authorities that intentional and unlawful interference with obligations created by a contract to purchase real estate, if known to the interferer, may give rise to a cause of action in tort. *Stannard v. McCool*, 198 Md. 609, 84 A. 2d 862, and cases cited. In that case there was no proof of knowledge. On the other hand it is recognized that up to the point where a contract is in existence, a broker or prospective purchaser has a right to compete, and even though the competition prevents the formation of a contract it is not unlawful. *Goldman v. Building Ass'n,* 150 Md. 677, 685, 133 A. 843. In the language of the *Restatement, Torts,* § 768(i) : "When B is legally free to deal either with C or with A, the privilege of competition implies a privilege on the part of A to induce B to deal with him rather than with C. But when B is legally obligated to deal with C, A is not privileged, by the mere fact of competition, to induce B to commit a breach of his legal duty." § 766(c) makes it clear that interference with a contract may be beyond the scope of the privilege of lawful competition even though the contract may be unenforceable because of non-compliance with the Statute of Frauds. This principle appears to have been recognized in *Cumberland Glass Mnf'g Co. v. DeWitt,* 120 Md. 381, 388, 87 A. 927.

In the instant case there was evidence of interference by Mrs. Horn with a bargain struck by Bramble and Lynch, when Bramble raised the price to $13,000, Lynch accepted it, and Bramble said "all right." She denied knowledge of such a bargain, although she certainly knew that a bargain had been made conditioned only

upon the making of a deposit. However, we are not concerned with the oral contract with Lynch, if any, for the contract relied on here is a contract for the payment of commissions by Bramble to Seth.

Lynch is not a party to the instant case, and the declaration clearly relies on an alleged contract between Bramble and Seth. Moreover, the court so charged the jury, and there was no objection to the charge, except on the grounds of the insufficiency of the evidence. The existence of a contract to pay commissions to Seth was not dependent upon a binding contract for the sale of the property. It has been held that a broker may have earned his commissions, even though the contract of sale may be unenforceable, *Neuland v. Millison*, 188 Md. 594, 597, 53 A. 2d 568, or defeated by the owner's inability or refusal to convey. *Borowski v. Meyers*, 195 Md. 226, 231, 72 A. 2d 701. See also *Aler v. Plowman*, 190 Md. 631, 633, 59 A. 2d 196; *McKeever v. Washington Heights Realty Corp.*, 183 Md. 216, 226, 37 A. 2d 305, and *Singer Construction Co. v. Goldsborough*, 147 Md. 628, 638, 128 A. 754. We think there was evidence from which the jury might properly find that Seth had earned his commissions when he procured a purchaser who was ready, willing and able to take the property at the price offered. For the purposes of this case it is immaterial whether Seth became entitled to the sum of $500 when he notified Bramble that Lynch would take the property at the quoted price of $12,500, or when Lynch told Bramble that he would take it at $13,000, and Bramble acquiesced. If there was any issue of fact as to Lynch's readiness or ability to pay, Bramble raised no objection on that score when Seth informed him that he had a deposit. The burden of establishing that fact was not upon the broker. *Stokes v. Wolf*, 137 Md. 393, 411, 112 A. 566.

In *Richards, Inc. v. Shearer*, 186 Md. 36, 39, 45 A. 2d 627, a real estate broker brought suit for interference with its contract with an owner for the payment of commissions, against a purchaser of the property from the owner. The court remarked that "the difficulty in the

appellant's case is not with the law but with the facts", and held that the evidence showed that the appellant had failed to prove that it had procured a purchaser at the price quoted and hence failed to establish a contract. There is a strong intimation that recovery would have been allowed if a contract had been established and interference shown.

The authorities in other jurisdictions are not entirely in accord. See notes, 97 A. L. R. 1273 and 146 A. L. R. 1417. In *McAuslan & Nutting, Inc. v. Futurity Thread Co.*, 254 Mass. 216, 150 N. E. 96 it was held that since the broker who had earned his commissions by procuring a purchaser still had a right of action against the owner for commissions, the mere fact that the owner was induced to sell to another person did not affect the right of action or establish damage. In *Hoffman v. Johnston,* 68 Ohio App. 19, 36 N. E. 2d 184, 189, where the broker sued for conspiracy to deprive him of his commissions, the court said: "the gist of the action is the damage and not the conspiracy", and held that damage was not shown where there was a subsisting right of action against the owner for the commissions, which did not depend upon the consummation of the sale. On the other hand, in *Hornstein v. Podwitz,* 254 N. Y. 443, 173 N. E. 674, 675, 84 A. L. R. 1, it was alleged that the plaintiff broker procured purchasers who executed a written contract with the owner, but that the defendants conspired with the President of the owner to secure the property at the same figure and divide the money that would otherwise have been paid as commissions. The complaint was amended to allege that the plaintiff suffered damages by reason of the owner's insolvency. It was argued that the complaint failed to state a cause of action "because it discloses that the plaintiff had not suffered any damages, as he now has all that he ever had, viz., a cause of action against his principal for the agreed commissions." The court said: "The appellants have misconceived the basis of the cause of action against them. If they had not induced the principal to breach its con-

tract with the plaintiff, he would have received the commissions which he had earned or had a cause of action on contract. therefor against his principal. They committed a legal wrong which gave rise to a cause of action in favor of the plaintiff. The fact that the plaintiff also has a cause of action against his principal for breach of contract does not prevent his having a cause of action in tort against them. They cannot be heard to say that they are not liable for their wrongful act because the owner of the premises is also liable to the plaintiff for his commissions." The court disapproved the earlier cases of *Popper v. Korn,* 218 App. Div. 513, 218 N. Y. S. 631, and *Weinberg v. Irwinessie Holding Corp.,* 225 App. Div. 241, 232 N. Y. S. 443, and distinguished *Deming v. Hill,* 251 N. Y. 573, 168 N. E. 432, affirming 225 App. Div. 815, 232 N. Y. S. 448, on the ground that in the *Deming* case there was no allegation of damages. The court also commented that "the owner was solvent when the plaintiff's contract was made and completed, and insolvent at the time of the trial."

The *Hornstein* case was relied upon in *Cal. Auto Court Ass'n v. Cohn,* 98 Cal. App. 2d 145, 219 P. 2d 511 and is cited with approval in *Prosser, Torts,* § 104, p. 1012. See also *Louis Schlesinger Co. v. Rice,* 4 N. J. 169, 72 A. 2d 197. Its effect seems to have been somewhat limited by a later decision of the Court of Appeals in *Simon v. Noma Electric Corp.,* 293 N. Y. 171, 177, 56 N. E. 2d 537, 539; In that case there was a suit against an owner for commissions and a suit against alleged interferers who conspired to induce a breach of the contract to pay commissions, joined in one action. There was a judgment against the owner, and another judgment in the tort action. As to the latter the court said: "Plaintiff's recovery of a judgment against Marr does not *ipso facto* make it impossible for him to recover also on a cause of action against others who conspired to induce Marr to breach his contract with plaintiff. (*Hornstein v. Podwitz,* 254 N. Y. 443, 448, 449, 173 N. E. 674, 675,

676, 84 A. L. R. 1.) But to recover on the cause of action for wrongful interference, by the other defendants, with his agreement with Marr, plaintiff had to prove damages resulting from that interference. (*Campbell v. Gates,* 236 N. Y. 457, 460, 141 N. E. 914, 915; *Associated Flour Haulers,* [*etc.*] *v. Hoffman,* 282 N. Y. 173, 180, 181, 26 N. E. 2d 7, 9, 10.) No such damages were proven here, since plaintiff was successful in obtaining a judgment against Marr for the amount of the commissions due from Marr. (See *Shapiro v. Greenwich Savings Bank,* 266 App. Div. 359, affd. 293 N. Y. 724.)" Recovery under the doctrine of the *Hornstein* case seems limited, therefore, to cases where there is proof of actual damage, although it has been assumed that an allegation of special damage is not essential as a matter of pleading. See *Rosenberg v. Weisberger,* 200 Misc. 198, 108 N. Y. S. 2d 962.

The rule that in a civil action based on conspiracy damage is the gist of the action seems to have been recognized in Maryland. *Kimball v. Harman,* 34 Md. 407, 411. If not the gist of the action, it is at least an essential element of the tort. *Edison Realty Co. v. Bauernschub,* 191 Md. 451, 461, 62 A. 2d 354; *Rent-a-Car Co. v. Globe & Rutgers Fire Ins. Co.,* 161 Md. 249, 260, 156 A. 847. We are not dealing with conspiracy in the instant case, but the' tort of interference is somewhat analogous, and we may assume that proof of some damage would be prerequisite to recovery. However, it has been held that if damage is shown in a tort action, the defendant is not entitled to a directed verdict merely because the monetary amount is not proven, even though the defendant may be entitled to an instruction, if requested, limiting the recovery to nominal damages. *Coca-Cola Bottling Works v. Catron,* 186 Md. 156, 164, 46 A. 2d 303; *Salisbury Coca-Cola Bottling Co. v. Lowe,* 176 Md. 230, 4 A. 2d 440. There was no request for such an instruction in the instant case, and no objection to the charge except in regard to the legal sufficiency of the evidence.

We think there was legally sufficient evidence of damage. It is true that the plaintiff could have sued the Brambles for his commissions, but he was not compelled to do so, if he chose to sue the interferer in tort instead of the owner in contract. On this point we think the reasoning of the *Hornstein* case is persuasive. It seems probable that limitations would now bar an action on the contract; there is no showing that a judgment against the Brambles would have been collectible, if Seth had elected to sue them. On account of Mrs. Horn's actions, Seth was put in a position where he was compelled to sue someone. If the sale to Lynch had gone through the money would have passed through Seth's hands and no suit would have been necessary. Moreover, the Brambles would have had no reasonable objection to paying one commission, but it was foreseeable that they might resist the payment of commissions to two brokers, even if it were not inferable from the testimony that the Brambles were led to believe by Mrs. Horn that they were not obligated to Seth. It can hardly be maintained that wrongful interference that gives rise to a double claim and a potentially expensive litigation contains no element of damage. *Cf. McGaw v. Acker, Merrall & C. Co.*, 111 Md. 153, 160, 73 A. 731.

Since the trial court cut the verdict of the jury to the amount of commissions due to Seth, we have no question here of exemplary damages based on malice. *Cf. Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556, 569, 69 A. 405, 16 L. R. A., N. S., 746. No instruction on the point was asked or given. Since there was some evidence of damage to Seth because of the interference, we think the motion for judgment N. O. V. was properly denied.

*Judgment affirmed, with costs.*

SOBELOFF, C. J., delivered the following dissenting opinion, in which DELAPLAINE, J., concurred.

As the decision in this case may carry implications important to those engaged in the real estate business,

Judge Delaplaine and I feel impelled to state the reasons for our non-concurrence.

Real estate brokers, we think, will learn with surprise that they expose themselves to liability in damages under such circumstances as this record discloses.

It may be granted that the Brambles became liable for commissions to their broker, Seth, if he produced the Lynches, who were ready, willing and able to buy on the terms specified in his employment. It may be granted also that such liability would not be affected by the fact that an oral agreement between the Brambles and the Lynches might be unenforceable because of the Statute of Frauds. It is far from clear, however, that the Brambles definitely engaged themselves, even orally, to sell to the Lynches. The record seems to show that before Seth tendered a deposit the Brambles changed their mind, as they had a perfect legal right to do.

Our attention, however, needs to be focused not on the Bramble-Lynch agreement, but on the Brambles' agreement with Seth to pay him commissions when he had performed his service. It is for the alleged interference with the latter agreement that Seth sued Mrs. Horn.

As we see it, Seth has proved no case against her and has suffered no damage from her conduct. His right of action against the Brambles, if it arose at all, has remained complete. Mrs. Horn's activities did not weaken Seth's claim against the Brambles. Whatever effect these activities of Mrs. Horn may have had on the oral agreement (if any) between the Brambles and Lynch, they were innocuous as to the agreement between the Brambles and Seth.

There is no suggestion in the record that the Brambles would be unable to meet any judgment against them for commissions and no proof of special damage. Seth simply declined to sue the property owners for reasons undisclosed by the testimony. If he preferred not to sue them and has allowed limitations to run, this is no fault of Mrs. Horn.

The mere fact that in this case the owners may have deliberately obligated themselves to two brokers, and may be disinclined to pay one of them, is immaterial. They could have been made to pay Seth, if he procured a customer on their terms, and it is by no means certain that if he had made demand upon the Brambles they would not have paid without suit.

Recognizing that Seth cannot maintain a suit if he has suffered no damage, it is suggested in the opinion that his damage consisted in that he was put to the necessity of suing the Brambles. The answer is that there is nothing to indicate that Mrs. Horn advised the Brambles not to pay Seth, or that she even discussed his commissions with them. The cost of prosecuting a suit to recover five hundred dollars in commissions would in any event hardly equal that amount; but it may be that, as pointed out, no request having been made for an instruction as to damages the appellant cannot now complain of the size of the verdict. She did, however, challenge the legal sufficiency of the evidence to support a verdict against her.

This case is distinguishable from *Deming v. Hill,* 251 N. Y. 573, 168 N. E. 432, for there insolvency of the owner supervened to defeat collection of the commission. The case most relied upon in the majority opinion, *Hornstein v. Podwitz,* 254 N. Y. 443, 173 N. E. 674, 84 A. L. R. 1, has itself been limited by the New York Court of Appeals, so as not to reach a case like this. Against this attenuated New York rule are the decisions referred to in Massachusetts and Ohio.

Our impression of the cases relied on in the Court's opinion and other cases where liability has been upheld, is that in nearly all of them the defendant interfered with an exclusive agency of the plaintiff of which the defendant had knowledge; or there was some aggravating factor such as fraud, deviousness or conspiracy, (as where a dummy corporation was used to simulate a sale to an independent purchaser, *Skene v. Carayanis,* 103 Conn. 708, 131 A. 497) ; or there was duress, or malicious

and wanton interference with the plaintiff beyond the press of competition, and the motive was to injure and not merely one of business rivalry, (as where plaintiff having preferred charges against defendant's company before the Real Estate Board the defendant, angered and desirous of injuring plaintiff, threatened and coerced the prospective purchaser, thereby preventing him from consummating the deal which plaintiff broker had arranged. *Krigbaum v. Sbarbaro*, 23 Cal. App. 427, 138 P. 364.)

In the *Hornstein* case, itself, the plaintiff broker had procured a purchaser and a contract had been signed between buyer and seller. The real estate operator in whose office the broker was employed then connived with the owner to deprive the plaintiff of his commissions. There was no competition; no other customer was produced. They simply conspired to disguise and appropriate the customer the plaintiff had found, and proceeded to divide between themselves the commissions which plaintiff had earned. Moreover, the vendor corporation was insolvent. Under these circumstances— so different from the case here—the plaintiff's employer who had fraudulently collaborated with the vendor was held liable. It was really not a case dealing with the activities of rival brokers.

An examination of notes and illustrations accompanying the *Restatement of the Law of Torts*, Sec. 768, discloses that the writers had in mind fact situations unlike this case.

As the opinion frankly recognizes, the question has been decided both ways in other jurisdictions. Since it is a new question in Maryland we should prefer the rule which is more in keeping with the practicalities of the real estate business. It seems to us not required by settled law, or consistent with sound policy, to put unnecessary impediments in the way of brokers engaged in competitive effort.

In this case Mrs. Horn was trying to obtain the property for her customer, while a competing broker was

endeavoring to effect sale to his. Neither had an exclusive agency. Such rivalry not uncommonly becomes quite sharp. At what point must it stop? When a broker hears that his competitor has gotten an oral offer, but no contract has been signed and no deposit paid, must he desist or make himself liable? How was Mrs. Horn to know that the Lynches would really go through with their promise to come up with an offer backed by a deposit? They might still decide not to sign the contract or pay the deposit, despite all the eager talk. The experience of brokers will confirm that negotiations often reach this point and then abort. If the Brambles agreed to wait till one o'clock for a deposit, that was a *nudum pactum,* from which they were free to withdraw before the Lynches closed the deal with the deposit. Both parties obviously treated a deposit as the expected prerequisite to an effective engagement to buy and sell.

It cannot be said on this record that either the Brambles or the Lynches intended to commit themselves firmly by the telephone conversations; these communications, it seems to us, were only preliminary exchanges not meant to become binding until the customary deposit was paid and a contract signed. An oral contract is legally possible, but it would have to be more clear and explicit than anything established here.

Until the uncertainty was cleared Mrs. Horn was within her rights in persisting in the pursuit.

Real estate brokers are in no special class, and where fixed and definite contractual obligations have arisen they are required to respect them. Interference by a broker with an actual agreement is actionable, and a broker who has been injured may in a proper case sue the offending broker in tort as well as his principal in contract. But short of fully matured obligations, a broker ought not to be hobbled and confused by the threat of his becoming personally liable to his competitor.

More especially we see no cause of action in this case, where the plaintiff has suffered no injury through the defendant's acts.

Judge Delaplaine authorizes me to say that he concurs in this opinion.